Filed 6/18/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LI-LIN SUNG LEE,<br><br>　　　Plaintiff, Cross-defendant, and Respondent,<br><br>v.<br><br>CALIFORNIA CAPITAL INSURANCE COMPANY,<br><br>　　　Defendant, Cross-complainant, and Appellant. | A136280<br><br>(Alameda County<br>Super. Ct. No. RG11571734) |

In this appeal from a judgment confirming an insurance appraisal award, California Capital Insurance Company (California Capital) contends the trial court erred in compelling an appraisal that required the appraisal panel to assign loss values to items the insured claimed were damaged in a fire even if the items were not damaged or did not exist. It also claims the court erred in confirming the appraisal award, arguing that the appraisal panel exceeded its authority by issuing two competing and vastly different values for the loss.

We agree with California Capital that the award issued in this case pursuant to the trial court's directive neither complies with the terms of the governing statute nor accomplishes the objectives of an appraisal. It was error to compel the appraisal panel to assign loss values to items simply because they were listed in the insured's scope of loss and regardless of whether inspection revealed they were undamaged or never existed. Accordingly, we reverse.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2010, a fire damaged an apartment building in Oakland owned by Li-Lin Sung Lee (the "property"). The property consists of a four-story building containing a total of twelve apartments, with four units on each of three levels and a fourth garage level underneath. The fire started in a ground floor unit—unit number 3. According to California Capital, the flames did not extend beyond unit 3. Lee claims the fire damaged six of the twelve apartments with fire or smoke.

The property was insured at the time of the fire under a California Capital policy issued to Lee. Based on its investigation, California Capital prepared an interim estimate of damage to unit 3 of $69,255.34. In December 2010, it issued an initial payment to Lee of $46,755.34, representing the initial estimate less depreciation and the applicable deductible. California Capital made additional payments directly to vendors for demolition and fire restoration.

Lee retained licensed public adjuster Kevin Dawson to assist her in the presentation of her claim. In February 2011, Dawson submitted a claim to California Capital on behalf of Lee. The total claim exceeded $800,000. The statement of loss provided breakdowns of the claimed costs for cleaning, asbestos abatement, reconstruction of the affected apartments, and loss of rent. As set forth in Dawson's claim on behalf of Lee, the fire loss consisted of burn damage to unit 3 and smoke damage to the "common" walls located between apartments on the two floors above unit 3. According to the claim submitted by Dawson, all the interior rooms of five apartments other than unit 3 would need to be completely dismantled and then replaced. The claim also included removal of a portion of the stucco exterior around the building, as well as removal of iron balcony railings, followed by a repainting of the entire building.

California Capital sought to inspect the property and investigate the new claim. Dawson questioned the need for further investigation. In March 2011, Dawson made a written demand for appraisal pursuant to Insurance Code section 2071. California

2

Capital contended it did not have a sufficient opportunity to review and respond to the insured's claim, and again requested that an inspection be allowed.

In April 2011, Lee filed a petition to compel an insurance appraisal and to appoint an umpire to oversee the appraisal. California Capital opposed the petition on the grounds that (1) it was premature because it had not completed its adjustment of the claim, (2) the petition improperly sought appraisal of only the insured's scope of loss, and (3) appraisal of a disputed scope of loss is unauthorized. At a hearing conducted in June 2011, the trial court continued the matter for one month in order to allow California Capital to re-inspect the property and respond to the claim presented by Dawson on behalf of Lee. After California Capital completed its re-inspection, it issued an additional payment to Lee in the amount of $109,367.41.

In supplemental briefing submitted after California Capital completed its re-inspection, Lee again demanded that the court order appraisal of her scope of loss. California Capital claimed the court was not authorized to compel an appraisal of disputed items, which included the existence of smoke and fire damage in certain areas, the scope and cause of any damage to exterior stucco, and the need for code upgrades and similar work to comply with legal requirements, including whether any such work was covered by the policy. California Capital also argued that the insured's loss estimate and scope of loss was inflated and included damages and work unrelated to actual fire damage.

In June 2011, the court granted Lee's petition to compel an insurance appraisal. The court's order set forth the following guidelines for the appraisal panel: (1) the appraisal was to "value the damages caused by the fire only;" (2) the "scope of the loss" was "limited to those items of loss agreed by the parties to have been damaged in the fire;" (3) the panel was instructed not to make any coverage or causation determinations; and (4) no valuation for loss of rental or business income was allowed.

Lee appointed Keith Charleston to serve as her appraiser, while California Capital appointed Thad Eaton as its appraiser. After the appraisers were unable to agree upon the

selection of a neutral umpire, Lee requested that the court appoint one. The court appointed retired Judge Demetrios Agretelis to serve as the umpire.

The appraisal hearing commenced on October 11, 2011. Lee's public adjuster, Dawson, appeared on her behalf. Dawson argued that the insured's entire scope of loss must be appraised. By contrast, California Capital argued that the insured's scope of loss was not a proper subject of the appraisal and that the court had already ruled that only the agreed-upon scope of damage should be appraised. The umpire suspended the hearing pending clarification from the trial court as to what items should be valued at the appraisal.

Two days after the umpire suspended the appraisal hearing, Lee filed a separate lawsuit for breach of contract and bad faith against California Capital. Following the filing of the bad faith lawsuit, California Capital moved to dismiss Lee's petition to compel an appraisal. Among other things, it argued that Lee had waived any right to appraisal by refusing to participate in the appraisal procedure fashioned by the court and by filing a bad faith lawsuit. Lee opposed the motion to dismiss, contending that an appraisal should proceed with respect to her scope of loss.

On November 21, 2011, the trial court denied California Capital's motion to dismiss and modified its July order compelling an appraisal. The modified order directed the appraisal panel to "value three categories of items: (a) items of loss agreed by the parties to have been damaged by the fire; (b) items of loss asserted by Lee to have been damaged by the fire but where [California Capital] disputes coverage; and (c) items of loss asserted by [California Capital] to have been damaged by the fire but where Lee does not assert a claim." As in the original order, the modified order directed the panel not to make any causation or coverage determinations, or to value the loss of rental or business income. The modified order also specified as follows: "Following the appraisal proceedings, the parties can through other proceedings resolve their disputes regarding whether an appraised item was covered by the policy, whether the item was damaged, and whether the item was damaged by the fire."

4

The appraisal hearing resumed January 10, 2012.  California Capital argued that Lee's estimate sought an award for items that demonstrably did not ever exist at the property, including extra windows in all the rooms.  The panel declined a request by California Capital to inspect the property.  According to California Capital, Lee's appointed appraiser took the position that the panel was obligated to appraise the scope of loss presented by the insured, even if it was apparent to the panel that the scope was incorrect in matters such as square footage and the number of stories that a building contained.

On February 8, 2012, the appraisal panel issued a unanimous appraisal award setting forth, in exhibits A and B to the award, the replacement cost loss and actual cash value for each claimed item.  Exhibit A consisted of items in the insurer's scope of loss.  Exhibit B consisted of items in the insured's scope of loss.  The panel explained that it did not consider overlaps or duplications between the exhibits.  The parties agreed that no items fell into the third category of loss identified by the court in its November 2011 order—i.e., items that California Capital asserted were damaged but that were not the subject of a claim by Lee.  The award listed the following amounts:

Exhibit A replacement cost loss (insurer's scope):      $190,505.21

Exhibit A actual cash value loss (insurer's scope):      $186,041.74

Exhibit B replacement cost loss (insured's scope):      $813,884.89

Exhibit B actual cash value loss (insured's scope):      $788,057.02

The appraisal award contains the following limiting language:  "The award with attached exhibits takes no position on the appropriate scope of construction or method of repair; it makes no determination of coverage under the insurance policy at issue; it does not indicate what is due and owing under the terms of the insurance policy; it does not provide [an] interpretation of the insurance policy; it does not address the question of whether items claimed were in fact damaged/destroyed by the fire damage [sic] or other questions of causation.  The panel has made no determination whether the items claimed existed."

5

Roughly one week after the award issued, Dawson sent a letter to California Capital asserting that Lee had procured an appraisal award in the amount of $813,884.89. The letter demanded payment and asserted that there was no good faith, genuine dispute about whether the payment was due.

On March 1, 2012, California Capital filed a petition to vacate or, in the alternative, to correct the appraisal award. It argued that the appraisal panel exceeded its authority by failing to value the loss and instead issuing two vastly different valuations of the same fire loss. It asserted that the appraisal panel valued a theoretical loss, including items that were not damaged or that never existed at the property. It sought to vacate the award but argued in the alternative that the award could be corrected by limiting the scope of loss to the items that the parties agreed were damaged by the fire—i.e., the values contained in exhibit A to the award. Thus, California Capital sought to correct the award by striking exhibit B and the references to that exhibit. Lee filed an opposition to the petition and separately filed her own petition to confirm the appraisal award.

The trial court denied California Capital's petition to correct and/or vacate the award and separately granted in part Lee's petition to confirm the award. The court's order denying California Capital's petition states that it was not the appraisal panel's role to decide whether particular items were actually damaged in the fire or replaceable under the policy, or even whether they existed at the time of the fire. According to the court, "those are matters as to which the parties preserve a right to trial by jury, and which it was not within the province of appraisers to determine." In the order granting Lee's petition in part, the court agreed that the award was in conformity with the November 2011 order compelling appraisal but disagreed with Lee's proposed form of judgment, which failed to include the terms of the award that expressed its limitations.

The court entered judgment on July 13, 2012. The judgment attached the appraisal award and restated the limiting language contained in the award. Consequently, the judgment reflects that the appraisal award does not address issues of coverage or causation, or even whether the claimed items existed at the time of the fire. California Capital timely appealed.

6

1.    *Governing Legal Principles*

    A.    **Scope and Standard of Review**

In an appeal from an order granting or denying a petition to compel an appraisal, we apply a de novo standard of review when, as here, the issue turns on the interpretation of the relevant provisions of the insurance policy and the governing statutory scheme. (Cf. *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1116–1117 [de novo standard applies when issue is question of law involving interpretation of statutes and contract with no extrinsic evidence]; *JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1235 [in absence of conflicting extrinsic evidence offered to aid in contract's interpretation, ruling on petition to compel arbitration is reviewed de novo].)  Insofar as a party opposing the appraisal contends the appraisal should have been stayed pending resolution of issues outside the scope of an appraisal hearing, we apply an abuse of discretion standard in assessing whether the lower court erred in denying the stay and compelling an appraisal. (See *Alexander v. Farmers Ins. Co., Inc.* (2013) 219 Cal.App.4th 1183, 1190, 1196 [decision whether to stay appraisal is committed to sound discretion of trial court].)

"Appraisal hearings are a form of arbitration and are generally subject to the rules governing arbitration.  Judicial review of an arbitration, or appraisal award, is circumscribed." (*Kacha v. Allstate Ins. Co.* (2006) 140 Cal.App.4th 1023, 1031 (*Kacha*).)  It is not the court's role to review the merits of the controversy or to determine whether the evidence is sufficient to support the appraisal award. (*Ibid.*)

The exclusive grounds for vacating an appraisal award are set forth in Code of Civil Procedure section 1286.2, subdivision (a). (See *Maaso v. Signer* (2012) 203 Cal.App.4th 362, 371.)  Except as specified in the statute, appraisal awards "are immune from judicial review in proceedings to confirm or challenge the award." (*Ibid.*)  An appraisal award may be vacated on the following grounds:  "(1) The award was procured by corruption, fraud or other undue means.  [¶]  (2) There was corruption in any of the arbitrators.  [¶]  (3) The rights of the party were substantially prejudiced by

misconduct of a neutral arbitrator. [¶] (4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted. [¶] (5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title. [¶] (6) An arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in [Code of Civil Procedure] Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision." (Code Civ. Proc., § 1286.2, subd. (a)., bolding omitted.)

"We review the trial court's ruling on a challenge to an appraisal award under a de novo standard, drawing every reasonable inference to support the award. [Citation.] To the extent the court's ruling rests on issues of disputed fact, however, we apply the substantial evidence test." (*Kacha, supra,* 140 Cal.App.4th at p. 1031.)

### B. Law Governing Insurance Appraisals

All fire policies issued in California must be on a standard form that includes an appraisal provision as set forth in Insurance Code section 2071. (Ins. Code, §§ 2070, 2071.) Under the statutorily-mandated appraisal provision, the parties are required to participate in an informal appraisal proceeding in the event there is a disagreement about the actual cash value or the amount of the loss and the insurer or insured makes a written request for an appraisal.[1] The California Capital policy in this case included an appraisal provision consistent with Insurance Code section 2071.

---

[1]The appraisal provision in Insurance Code section 2071 provides as follows: "In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written request of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of the request. Where the request is accepted, the appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon the umpire, then, on request of the insured or this company, the umpire shall be selected by a judge of a court of record

8

The appraisal process is limited in scope.  (*Kirkwood v. California State Automobile Assn. Inter-Ins. Bureau* (2011) 193 Cal.App.4th 49, 58 (*Kirkwood*).)  "[A]lthough an appraisal is a specific form of limited arbitration, there are significant differences between the powers of an arbitrator and those of an appraiser."  (*Ibid.*)  An arbitrator typically exercises " 'essentially judicial functions,' " including deciding issues of law, and often resolves the entire dispute between the parties.  (*Id.* at pp. 58–59.)  By contrast, "an appraiser has authority to determine only a question of fact, namely the actual cash value or amount of loss of a given item."  (*Id.* at p. 59.)  " 'The function of appraisers is to determine the amount of damage resulting to various items submitted for their consideration.  It is certainly not their function to resolve questions of coverage and interpret provisions of the policy.' "  (*Jefferson Ins. Co. v. Superior Court* (1970) 3 Cal.3d 398, 403.)

A number of published California cases have sought to define the limits of an appraisal panel's authority.  In *Safeco Ins. Co. v. Sharma* (1984) 160 Cal.App.3d 1060, 1065–1066 (*Sharma*), the court held that the appraisal panel exceeded its authority by deciding, in effect, that the policyholder misrepresented the nature of the insured item that was stolen.  As explained further below, while we have no dispute with the *Sharma* court's holding based upon the facts of that case, in our view *Sharma* and its progeny have been misconstrued to suggest that an appraisal panel is compelled to assign a loss

---

in the state in which the property covered is located.  Appraisal proceedings are informal unless the insured and this company mutually agree otherwise.  For purposes of this section, 'informal' means that no formal discovery shall be conducted, including depositions, interrogatories, requests for admission, or other forms of formal civil discovery, no formal rules of evidence shall be applied, and no court reporter shall be used for the proceedings.  The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire.  An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss.  Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by the parties equally.  In the event of a government-declared disaster, as defined in the Government Code, appraisal may be requested by either the insured or this company but shall not be compelled."

value to anything that is submitted to it for consideration by an insured, regardless of whether the item was damaged or ever existed. The vastly different and competing valuations of loss arrived at by the appraisal panel in this case, together with the various disclaimers as to the meaning of the valuations, are largely the product of this overly expansive interpretation of *Sharma*. In order to put the issue into perspective, we briefly summarize three of the key cases bearing upon an appraisal panel's inability to decide issues other than the actual cash value or amount of loss of an item: (1) *Sharma, supra,* 160 Cal.App.3d 1060; (2) *Kacha, supra,* 140 Cal.App.4th 1023; and (3) *Devonwood Condominium Owners Association v. Farmers Insurance Exchange* (2008) 162 Cal.App.4th 1498 (*Devonwood*).

### i. *Sharma*

In *Sharma,* the insured filed a claim for items stolen in a home burglary. (*Sharma, supra,* 160 Cal.App.3d at p. 1062.) The insured and insurer could not agree on the value to assign to a set of 36 eighteenth century Indian "Bundi School" miniature paintings. The insured demanded an appraisal. (*Ibid.*) The insured claimed the paintings were a matched set, which would be more valuable than an unmatched set of paintings. In valuing the paintings, the appraisal panel effectively concluded the paintings were an unmatched set based upon an expert's opinion that there were no matched sets of Bundi School paintings on the west coast and that any such sets would be in a museum or a well-known private collection. (*Id.* at p. 1065.) Consequently, the panel determined the missing artwork was of "average quality" and valued it accordingly. (*Id.* at p. 1063.)

The court in *Sharma* held the appraisal panel had exceeded its authority by deciding a factual issue not properly before it. (*Sharma, supra,* 160 Cal.App.3d at p. 1066.) According to the court, "[i]n no authority is it suggested that an appraisal panel is empowered to determine whether an insured lost what he claimed to have lost or something different. [¶] When an insurer disputes an insured's description in identification of the lost or destroyed property, it necessarily claims the insured *misrepresented*—whether innocently or intentionally—the character of the loss in filing a proof of loss. In turn, this claim opens the door to allegations of fraud. Were an insurer

10

permitted to include the former issue within the scope of an appraisal, a determination in the insurer's favor would foreclose a court from determining one essential element of fraud in any subsequent litigation. Certainly, an insurer is free to litigate whether the insured has misrepresented what he lost; but it is beyond the scope of an appraisal." (*Id.* at pp. 1065–1066.)

### ii.   *Kacha*

In *Kacha,* the insured presented a claim for fire and smoke damage resulting from a wildfire. (*Kacha, supra,* 140 Cal.App.4th at p. 1026.) Like Lee in this case, the insured retained public adjuster Kevin Dawson, who in turn demanded an appraisal and selected Keith Charleston as appraiser. (*Id.* at p. 1027.) In its appraisal brief, the insurer pointed out that the value of the loss was not the only disputed issue because the parties had not resolved issues regarding the existence and scope of damage. The insurer claimed that damage to some items was not caused by the wildfire. (*Id*. at pp. 1027–1028.) In arriving at an appraisal award, the panel assigned an amount of zero for numerous items submitted by Dawson on behalf of the insured. (*Id.* at p. 1029.)

Citing *Sharma,* the *Kacha* court concluded that the award should have been vacated because the appraisal panel exceeded its authority. (*Kacha, supra,* 140 Cal.App.4th at pp. 1036–1037.) The court reasoned that the panel effectively determined that any claimed damage to various items submitted by Dawson was caused by something other than the wildfire. By deciding causation issues instead of just limiting itself to valuing the items within the scope of loss presented by the insured, the appraisal panel exceeded its authority by making determinations that certain claimed losses were not covered by the insured's policy. (*Id*. at p. 1036.)

### iii.   *Devonwood*

*Devonwood* addressed the form of judgment used to confirm an appraisal award when there is a dispute about which losses are covered under the applicable policy. There, a condominium owners association submitted a claim for fire damage to a unit. (*Devonwood, supra,* 162 Cal.App.4th at p. 1501.) The insurer took the position it had no obligation under the policy to pay for interior painting. (*Id.* at p. 1502.) The appraisal

panel issued an award that segregated the replacement cost for interior painting from the replacement cost for all other items. The award specified that the segregation of costs was made " 'without consideration of . . . any coverage or other provision of the above policy which might affect the amount of the insurer's liability thereunder. . . ." (*Id.* at p. 1501.) In confirming the appraisal award, the trial court issued a money judgment for the entire amount of the appraisal. (*Id.* at p. 1503.)

The appellate court concluded the judgment had to be vacated because it did not conform to the appraisal award, which merely established replacement cost values for the claimed items of damage but did not address liability. (*Devonwood, supra,* 162 Cal.App.4th at pp. 1503, 1506.) Under those circumstances, the court "was limited to the issuance of a judgment which brought finality to the dollar amount of the replacement cost values, and nothing more." (*Id.* at p. 1506.) The *Devonwood* court confirmed that "a judgment after confirmation of an appraisal award fixing the cash value of loss does not preclude further litigation on other issues between parties to an insurance policy." (*Id.* at p. 1507, fn. 4.)

A *Devonwood* itemization permits an appraisal panel to fulfill its obligation to assign loss values to damaged items without exceeding its authority by deciding issues that bear upon causation, coverage, or policy interpretation. The parties are free to dispute the insurer's liability to pay for disputed categories of loss in subsequent litigation.

## 2. *Compelling Appraisal of Disputed Items*

California Capital contends the trial court erred when it modified its order compelling an appraisal to require the appraisal panel to value three categories of items— the items of loss the parties agreed were damaged by the fire, the items of loss asserted by Lee to have been damaged by the fire but disputed by California Capital, and the items of loss asserted by California Capital as to which Lee made no claim. California Capital claims the trial court lacked authority under Insurance Code section 2071 to order such an appraisal because it includes disputed items.

12

As we explain, a trial court does not necessarily err in compelling appraisal of disputed items when the disputes turn on issues such as coverage, causation, or policy interpretation. Those legal issues can be resolved in subsequent litigation, although it may be appropriate in certain cases to stay an appraisal pending resolution of the disputed issues. However, when the disputes turn on the condition or quality of damaged or destroyed items—and it is possible for the panel to assess an item's condition or quality without simply having to rely on the insured's representation—it is error to compel the appraisal panel to assign values to items that inspection reveals were not damaged or did not ever exist. In this case, the court erred because it directed the appraisal panel to assign loss values to items without regard to whether they were actually damaged.

We first address California Capital's contention that it was error to order an appraisal of disputed items. According to California Capital, Insurance Code section 2071 allows an appraisal panel to value an item of loss only when the parties agree that it is within the scope of damage and is covered under the policy. It states that the purpose of the appraisal, as expressed in Insurance Code section 2071 and cases interpreting it, is to set the amount of loss under the policy for an insured item. California Capital reasons that damage that is not covered, or that is the subject of a coverage dispute, is by definition not an insured item under a policy. It goes so far as to claim that *Sharma, Kacha,* and *Devonwood* support its interpretation.

California Capital fundamentally misreads *Sharma, Kacha,* and *Devonwood.* It is simply not the case that an appraisal is limited to items of loss that the parties agree are covered under the policy. In *Kacha,* the court held that the appraisal panel exceeded its authority by *failing* to assign a value to an item for which coverage was disputed. (*Kacha, supra,* 140 Cal.App.4th at pp. 1036–1037.) In *Devonwood,* the court directed entry of judgment confirming an appraisal that included items where there was no agreement as to coverage under the policy, with the caveat that the judgment had to conform to the appraisal award and indicate the limitations on the award. (*Devonwood, supra,* 162 Cal.App.4th at pp. 1501–1506.) As *Kacha* and *Devonwood* demonstrate, an appraisal panel may assign a value to items as to which coverage is disputed with the

13

disclaimer that the award does not establish coverage or the insurer's liability to pay. The issue of whether the loss is covered under the policy is a separate, legal issue that must be resolved outside the appraisal process.

California Capital contends this process is wasteful because it requires the parties to engage in a two-step process to resolve a claim. It argues that the appraisal process should be the end, not the beginning, of the valuation dispute. But the process it proposes would be even more wasteful. If an appraisal were limited to items of loss that the parties agree are covered, but there is disagreement as to whether certain items are covered, the parties would still be required to litigate whether the disputed items are covered. In that case, because there would be no appraised value for disputed items that subsequently may be determined to be covered, the parties would be required to engage in a further attempt to appraise the items that were omitted in the first appraisal. Plainly, it is more efficient to value all items of loss, including disputed items, at the time an appraisal is performed. If it is determined there is no coverage for certain items, those items can simply be stricken from the award without requiring a further referral to an appraisal panel.

Moreover, if California Capital believed it was wasteful to engage in an appraisal before coverage or other legal issues were resolved, it could have sought to stay the appraisal pending resolution of those issues in a declaratory relief action. (See *Kirkwood, supra,* 193 Cal.App.4th at p. 62 [appraisal properly deferred until resolution of legal issues in declaratory relief action]; *Alexander v. Farmers Insurance Co., supra,* 219 Cal.App.4th at pp. 1194–1196 [court has discretion to defer appraisal pending resolution of legal issues in declaratory relief action].) In an appropriate case, this approach could provide valuable guidance to an appraisal panel that might otherwise struggle with disputed legal issues that are outside the scope of an appraisal. In this case, California Capital did not seek to stay the appraisal pending a resolution of coverage or other legal issues. Instead, its position was that an appraisal panel has no authority to appraise an item for which coverage was disputed, and it sought to limit the appraisal to an agreed-upon scope of loss. For reasons we have explained, a panel does not necessarily exceed its authority by appraising items within a disputed scope of loss when the disputes turn on

14

issues of coverage, causation, or other legal issues that an appraisal panel is not authorized to decide.

Although we conclude that a court may order appraisal of disputed items under appropriate circumstances, we do not think it is appropriate to order a panel to assign loss values to items that inspection reveals are not damaged or plainly never existed. Here, the court ordered the panel to value items of loss asserted by Lee to have been damaged by the fire as to which California Capital disputed coverage. While the court framed the issue in terms of appraising items as to which "coverage" was disputed, the court's order effectively directed the panel to value *all* items of loss claimed by Lee to have been damaged in the fire, regardless of whether those items actually suffered damage or ever existed. Indeed, the court's order specifically stated that issues concerning whether an "item was damaged" could be resolved through subsequent proceedings. Moreover, that is how the panel interpreted the order, because it issued its appraisal with the express disclaimer that it made no determination of whether particular items were in fact damaged or ever existed.

An assessment of whether an item is damaged or existed is fundamental to a valuation of the amount of the loss. As set forth in Insurance Code section 2071, the standard insuring language in a fire policy requires the insurer to pay "the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality . . . ." If an item is undamaged, there is no repair cost and no need to replace the item. Indeed, our Supreme Court has stated that " '[t]he function of appraisers is to determine the *amount of damage* resulting to various items submitted for their consideration.' " (*Jefferson Ins. Co. v. Superior Court, supra,* 3 Cal.3d at p. 403, italics added.) In *Sharma,* the court observed that an item's "*quality or condition*" is fundamental to assessing its value. (*Sharma, supra,* 160 Cal.App.3d at p. 1066.) Clearly, a determination that a component part of a building is undamaged is an assessment regarding its condition. Similarly, a determination that a claimed item of loss did not exist in the manner claimed by the insured bears upon the valuation of the loss. For example, if an insured claims that

15

damaged counters are made of granite but a simple visual examination reveals they consist of a much less expensive material, the panel is not compelled to assign a value for repairing or replacing granite countertops simply because the insured lists them on the items of loss submitted for the panel's consideration. Similarly, if an insured claims that a three-story apartment building damaged in a fire actually contains four floors, the panel is not required to place a value on a non-existent fourth floor.

The notion that an appraisal panel must assign a value to every item submitted by the insured for appraisal—regardless of whether the item existed or was damaged— derives from an overly expansive interpretation of the holdings in *Sharma* and *Kacha.* In *Sharma,* the appraisal panel erred in making a factual determination as to the *identity* of the stolen property. (*Sharma, supra,* 160 Cal.App.3d at pp. 1065–1066.) The court cautioned against confusing *identity* with *quality or condition,* which bears upon valuation. (*Id.* at p. 1066.) In a situation where property is damaged by a calamity such as a fire, unlike a circumstance where property is lost or stolen, the question of the property's identity typically does not arise, although in some cases it may be necessary to determine the condition of the property before the loss. The appraisal panel can assess for itself the damaged property's quality and condition after the loss—factors necessarily involved in an appraisal of value. There may be cases in which the identity of property damaged in a fire or other calamity is at issue, such as when an item is totally destroyed or damaged beyond recognition. (Cf. *ibid.* [referring to disputes not just about the identity of *lost* property but also property that is *destroyed*].) In such cases, it may be appropriate to apply the *Sharma* holding and require the appraisal panel to assign a value to items of loss claimed by the insured, without resolving the question of whether the items actually existed. When the pre-loss condition of the property is relevant and there is a dispute over the condition of the property prior to the loss, the panel may place more than one value on the loss provided that each value is based on different and explicitly stated assumptions concerning the property's pre-loss condition. But in the typical situation involving fire damage, where the quality or condition of the property is readily ascertainable and there is no dispute concerning its pre-loss condition, an appraisal panel

16

is not compelled by *Sharma* to assign values to non-existent or incorrectly described items of loss simply because they are claimed by the insured.

Similarly, the holding in *Kacha* does not compel an appraisal panel to assign a loss value to every item claimed by an insured, regardless of whether that item is damaged. In *Kacha,* the appraisal panel assigned a loss value of zero to numerous items submitted by the insured, including the front entry door and decking. (*Kacha, supra,* 140 Cal.App.4th at p. 1029.) The insured sought to vacate the award on the ground the panel made improper coverage determinations by awarding nothing for numerous items. The insurer contended the panel awarded nothing for various items simply because it found there was no damage to the item and not because it rejected coverage on causation grounds. (*Id.* at p. 1035.) In rejecting the insurer's explanation, the appellate court referred to the insurer's appraisal brief and noted there appeared to be no dispute that the front entry door and decking were damaged; the insurer's primary argument was that the damage was not *caused* by the fire. Consequently, the court concluded "[i]t is apparent that the appraisal panel made at least some coverage determinations, thereby exceeding its authority." (*Ibid.*) Notably, the court did not reject the principle that an appraisal panel may award nothing for items that are not damaged. Instead, *Kacha* stands for the principle that an appraisal panel exceeds its authority by assigning a value of zero to a *damaged* item based on a determination that the damage is not covered by the insurance policy.

Therefore, an appraisal panel does not necessarily exceed its authority by assigning a value of zero to items of loss submitted to it for consideration. If inspection reveals an item is undamaged or never existed, it is appropriate for the panel to award nothing for loss or damage to that item. The *existence* of damage to an item as well as the *nature* of the claimed item are factors that directly bear upon the valuation of the loss, including the cost to repair or replace the item. By contrast, the *cause* of any damage does not bear upon the amount that may be required to repair or replace the item, although it may be appropriate to include different amounts for the same items of loss when the condition of the property prior to the loss is disputed and relevant to the

17

valuation. Consequently, while an appraisal panel exceeds its authority by awarding nothing for damaged items based on causation or other coverage determinations, a panel does not exceed its authority by awarding nothing for items that are not damaged or never existed, where the nature or existence of the item is readily ascertainable. If there is a dispute about causation, the panel does not exceed its authority if it determines and clearly labels different amounts of loss where the amounts differ due to stated assumptions about the condition of the property prior to the loss.

We observe that it may be difficult to ascertain from an appraisal award the panel's rationale for awarding nothing with respect to a claimed item of loss. In this case, for example, the appraisal award simply lists items of loss along with columns for replacement cost loss and actual cash value. Because every reasonable inference is drawn to support an award (*Kacha, supra,* 140 Cal.App.4th at p. 1031), a court cannot assume that an appraisal panel exceeded its authority by awarding nothing for a particular item. Where a reasonable inference can be drawn that the item was undamaged, a court may not vacate the award simply because nothing was awarded for that item. In *Kacha,* it was not reasonable to infer that the items assigned a loss value of zero were undamaged where the insurer admitted some items were damaged and instead disputed the condition of the property prior to the loss and thus causation. (*Kacha, supra,* 140 Cal.App.4th at p. 1035.) In order to avoid disputes about whether a panel exceeded its authority by assigning a value of zero to certain claimed items of loss, the better practice may be to explain in the award why nothing was awarded. In other words, instead of simply placing a "zero" next to certain items of loss, thus leaving open to debate whether the panel based its decision upon an improper coverage determination, the panel could indicate "undamaged" next to a particular item, or it could clarify in notes accompanying the award that items assigned a loss value of zero were not damaged or did not exist at the property.

In this case, the mere fact the scope of loss was disputed did not preclude the court from compelling an appraisal. An appraisal may encompass disputed items when the disputes turn on issues of coverage, causation, or policy interpretation. Here, however,

18

the court went further and compelled the appraisal panel to assign loss values to items that may not have been damaged or never existed, simply because the insured claimed the items were damaged. In so doing, the court effectively prevented the appraisal panel from complying with the dictate of Insurance Code section 2071 to appraise the actual loss suffered by the insured. Instead, the panel was required to appraise a hypothetical loss, without regard to whether the items ever existed or actually required repair or replacement.

For these reasons, we reverse the court's order of November 21, 2011, compelling an appraisal of three categories of items, including items claimed by Lee to have been damaged in the fire. While there was no error in compelling an appraisal, even with respect to certain disputed items, the court erred in directing the appraisal panel to assign loss values to items that were undamaged or never existed. On remand, the trial court shall issue a revised order compelling an appraisal pursuant to Insurance Code section 2071. While it is appropriate for the panel to assign values to items of loss where coverage or causation is disputed, it is not appropriate to assign loss values to items that are undamaged or that demonstrably never existed.

### 3. *Claim that Appraisal Panel Exceeded its Authority*

California Capital next argues the appraisal award should be vacated because the appraisal panel exceeded its authority by issuing two completely different amounts of loss and valuing items that were not damaged or never existed at the property. In light of our conclusion that the court erred in compelling an appraisal of items that were not damaged or never existed, it follows that the appraisal award produced in compliance with that order must be vacated. Consequently, our disposition as to the order compelling appraisal technically renders California Capital's separate challenge to the appraisal award moot. Nevertheless, we briefly address some of the issues raised by the appraisal award in order to provide guidance upon remand for the trial court and the appraisal panel.

The appraisal award contains two competing and vastly different valuations for the replacement cost loss and actual cash value loss. Whereas one version of the appraisal

19

amount lists the building's replacement cost value at $190,505.21, the competing version of the appraisal amount lists the building's replacement cost value at $813,884.89. The appraisal panel simply applied consistent unit prices to the scopes of damage offered by the insured and the insurer, without making any effort to remove duplication or overlap between the two proposed scopes.

The appraisal award is fundamentally deficient because it does not provide a single valuation of the loss suffered by the insured. Instead, it presents two competing valuations with an express disclaimer that the appraisal did not determine the appropriate scope and method of repair or whether the submitted items were damaged or ever existed. In effect, the panel simply assigned values to the scopes of damage submitted by each side, without resolving any factual questions about the condition and quality of the property that was damaged in the fire. For example, the competing appraisal amounts contain different estimates for the repair of a single bedroom in one of the affected units. The competing estimates do not contain the same list of items requiring repair in the bedroom and apply different square footage numbers for the same spaces. In the case of a kitchen in one unit, one appraisal amount includes the cost of replacing one window, whereas the competing appraisal amount includes the cost of replacing two windows.

It is the responsibility of the appraisal panel to resolve these factual disputes and arrive at a valuation of the loss. It may be appropriate to segregate some items from the others because there is a dispute as to coverage or causation, but an appraisal should ordinarily not contain two competing valuations for the *same* item.[2]

The competing appraisal amounts appear to be the result of the view that an appraisal panel is required to apply a value to every item that is presented to it by a party, without regard to whether the item was damaged or ever existed. As explained above, the panel is not required to assign a value to every item submitted to it for appraisal. If

_____

[2]As discussed, *ante*, there may be limited circumstances when it is appropriate for an appraisal to contain more than one value for an item of loss, such as when the property's pre-loss condition is disputed and relevant to the valuation. In such a case, the appraisal award should clearly specify the assumptions underlying the competing valuations.

inspection reveals that an item is undamaged or never existed, the panel should not apply a loss value to the item. In addition, the panel should apply a single set of measurements to a physical space and determine what is required to effect a repair, instead of offering two dueling versions of required repairs. If one side claims a room has one window and the other side claims the room has two windows, it is the appraisal panel's obligation to resolve the dispute to arrive at a single value for the loss.

## DISPOSITION

The judgment confirming the appraisal award is reversed and the matter is remanded for further proceedings consistent with the views expressed in this opinion. Appellant shall be entitled to costs on appeal.

_____
McGuiness, P.J.

We concur:

_____
Pollak, J.

_____
Siggins, J.

Trial court:   Alameda County

Trial Judge:   Hon. Robert B. Freedman

Attorneys:

Attorney for Plaintiff, Cross-defendant, and Respondent, Li-Lin Sung Lee:

John Edward Kerly, Kerly Schaffer LLP

Attorney for Defendant, Cross-complainant, and Appellant, California Capital Insurance Company:

David Bernelle Demo, LHB Pacific Law Partners, LLP
Clark Holland, LHB Pacific Law Partners, LLP