MANELLA, J.
*1030 Appellants Arash Khorsand and Mahshid Fahandeza challenge the confirmation of an appraisal award under homeowners insurance policies issued by respondents Liberty Mutual Fire Insurance Company and Liberty Insurance Corporation (collectively, Liberty Mutual). Appellants contend the appraisers exceeded their authority regarding the award and that it was the product of fraud. In the published portion of this decision, we conclude that the trial court erred under Evidence Code section 703.5 in admitting part of an appraiser's declaration that appellants offered in opposing confirmation of the award. In the unpublished portion of this decision, we reject appellants' challenges to the confirmation of the award. We thus affirm the judgment confirming the award.
*92 *1031 RELEVANT FACTUAL AND PROCEDURAL BACKGROUND
In March 2013, appellants' two-story house in Pacific Palisades was insured under a homeowners policy issued by Liberty Mutual. On March 5, 2013, they reported damage due to water from an upstairs water pipe. After they submitted a claim (the pipe claim), Liberty Mutual initially paid $7,996.84. Appellants hired adjuster Robert Barton, who estimated that the loss totaled $482,490.37. After Liberty Mutual retained an engineering firm, "Exponent Failure Analysis" (Exponent), to assess the damage, a contractor retained by Liberty Mutual estimated the cost of repairs to be $34,487.82. Based on that estimate, Liberty Mutual made an additional payment for undisputed loss.
In late February 2014, following a heavy rainstorm, appellants reported damage to an upper deck and other areas, and submitted another claim (the deck claim).[1] After Exponent provided an estimate of the loss, Liberty Mutual made payments to appellants totaling between $59,618.34 and $66,077.[2] Appellants' contractor estimated the total loss to be approximately $288,000.
When adjuster Barton, acting on behalf of appellants, requested an appraisal relating to the pipe claim, Liberty Mutual denied the request, contending that disputes regarding coverage issues and the scope of the loss made an appraisal inappropriate.[3] Appellants petitioned the trial court to compel the appraisal, and in November 2014, the court granted appellants' petition. In ordering the appraisal, the court directed the appraisers to value separately *1032 items of loss regarding which Liberty Mutual disputed coverage or causation.[4] Later, in March 2015, appellants requested that the deck claim be included within the existing appraisal. Liberty Mutual agreed.
In February 2016, during the appraisal proceedings, Liberty Mutual filed an ex parte application for an order limiting the proceedings to the items of loss appellants had originally submitted in their claims. The trial court denied the application.[5]
*93 On April 27, 2016, the appraisal panel issued its award. The award was signed by the umpire and Liberty Mutual's selected appraiser, but not by appellants' selected appraiser. The award stated that the total loss was $132,293.04, and that the total loss to items regarding which Liberty Mutual disputed causation or coverage was $96,530.37.
When Liberty Mutual filed a petition to confirm the award, appellants opposed that petition and filed a motion to correct or vacate the award. Following a hearing, the trial court denied appellants' motion and confirmed the award. On January 10, 2017, the court entered judgment in favor of Liberty Mutual and against appellants in accordance with its rulings. This appeal followed.
DISCUSSION
Appellants maintain that the trial court erred in failing to vacate the award, contending that the appraisal panel exceeded its authority in issuing the award and that it was the product of fraud. They argue that the panel erred in appraising items whose estimated damage Liberty Mutual had previously not disputed, in disregarding other items of loss, in placing more than one valuation of damage on the losses, and in failing to allocate the items of loss between the two claims. As explained below, we reject these contentions.
*1033 A. Standard of Review
Because appraisal proceedings are a type of arbitration, judicial review of an appraisal award is circumscribed.[6] (See Lee , supra, 237 Cal.App.4th at p. 1154, 188 Cal.Rptr.3d 753.) Generally, "[i]t is not the [trial] court's role to review the merits of the controversy or to determine whether the evidence is sufficient to support the appraisal award. [Citation.] [¶] The exclusive grounds for vacating an appraisal award are set forth in Code of Civil Procedure section 1286.2, subdivision (a). [Citation.]" ( Ibid . ) Pertinent here are the grounds that "[t]he award was procured by corruption, fraud, or other undue means," and that "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted" ( Code Civ. Proc., § 1286.2, subds. (a)(1), (a)(4) ).[7]
The trial court's ruling on a challenge to an appraisal award is reviewed "under a de novo standard, drawing every reasonable inference to support the award. [Citation.] To the extent the court's ruling rests on issues of disputed fact, however, we apply the substantial evidence test." ( *94 Kacha v. Allstate Ins. Co. (2006) 140 Cal.App.4th 1023, 1031, 45 Cal.Rptr.3d 92 ( Kacha ).) As the record lacks a statement of decision and does not reflect the rationale for the ruling, we will imply all factual findings necessary to support it, and examine those findings for the existence of substantial evidence. ( ECC Capital Corp. v. Manatt, Phelps & Phillips, LLP (2017) 9 Cal.App.5th 885, 900-901, 215 Cal.Rptr.3d 492.)[8] *1034 B. Governing Principles**
C. Admission of Appraiser's Declaration
At the threshold of our inquiry into the confirmation of the award, we examine an issue regarding the evidence properly considered in reviewing that ruling, namely, the extent to which the court properly admitted a declaration by appellants' selected appraiser. After the court granted appellants' petition to compel appraisal, appellants selected Andrew Fraraccio as their appraiser and Liberty Mutual selected Jeff Caulkins as its appraiser; Fraraccio and Caulkins then chose Robert Mann to act as umpire. In challenging the award, appellants submitted a declaration from Fraraccio, who offered an account of the appraisal proceedings. Liberty Mutual asserted objections to the declaration under Evidence Code section 703.5, which the trial court overruled. On appeal, Liberty Mutual challenges that ruling.
Although Liberty Mutual noticed no cross-appeal from the judgment, we may consider the extent to which the declaration was inadmissible under Evidence Code section 703.5. "As a general rule, respondents who fail to file a cross-appeal cannot claim error in connection with the opposing party's appeal. [Citation.] A limited exception to this rule is provided by [Code of Civil Procedure] section 906, which states in pertinent part: 'The respondent ... may, without appealing from [the] judgment, request the reviewing court to and it may review any of the foregoing [described orders or rulings] for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken.' [Citation.] ' "The purpose of the statutory exception is to allow a respondent to assert a legal theory which may result in affirmance of the judgment." [Citation.]' [Citation.]" ( Prakashpalan v. Engstrom, Lipscomb & Lack (2014) 223 Cal.App.4th 1105, 1121, 167 Cal.Rptr.3d 832.) We therefore examine the admissibility of Fraraccio's declaration.
1. Governing Principles
Evidence Code section 703.5 states: "No person presiding at any judicial or quasi-judicial proceeding, and no arbitrator or mediator, shall be competent to testify, in any subsequent civil proceeding, as to any statement, conduct, decision, or ruling, occurring at or in conjunction with the prior proceeding, except as to a statement or conduct that could (a) give rise to civil or criminal *1035 contempt, (b) constitute a crime, (c) be the subject of investigation by the *95 State Bar or Commission on Judicial Performance, or (d) give rise to disqualification proceedings under paragraph (1) or (6) of subdivision (a) of Section 170.1 of the Code of Civil Procedure." As explained in Cobler v. Stanley, Barber, Southard, Brown & Associates (1990) 217 Cal.App.3d 518, 528, fn. 5, 265 Cal.Rptr. 868 ( Cobler ), though enacted in 1979, Evidence Code section 703.5 did not encompass arbitrators until it was amended in 1988.
The application of Evidence Code section 703.5 to declarations from arbitrators was examined in Cobler . There, a party to an arbitration sought to vacate the award on the ground that the arbitrator had engaged in corruption or was biased ( Code Civ. Proc., § 1286.2, subd. (a)(1) ). ( Cobler, supra , 217 Cal.App.3d at pp. 523-526, 265 Cal.Rptr. 868.) After admitting a declaration from the arbitrator over an objection based on Evidence Code section 703.5, the trial court declined to vacate the award. ( Cobler, supra, at pp. 525-526, 265 Cal.Rptr. 868.)
On appeal, the party seeking vacation of the award challenged the admission of the arbitrator's declaration. ( Cobler , supra , 217 Cal.App.3d at p. 527, 265 Cal.Rptr. 868.) In rejecting that contention, the appellate court noted that before the amendment of Evidence Code section 703.5 to encompass arbitrators, judicial decisions had confined the admission of declarations from arbitrators to specific purposes. ( Cobler, supra, at p. 527, 265 Cal.Rptr. 868.) Under those decisions, arbitrator declarations were admissible when " 'the record d[id] not disclose issues submitted for decision and the materials considered by the arbitrators [citation][,]when a dissenting arbitrator charge[d] improprieties in the arbitration [citation][,] and whe[n] others charge[d] bias, partiality or improper conduct [citation],' " but were not admissible to challenge the merits of the award. ( Id . at p. 528, 265 Cal.Rptr. 868.) The appellate court concluded that the amendment to Evidence Code section 703.5 imposed even greater restrictions, limiting the admission of arbitrator declarations to the four purposes specified in that statute, which the court construed to encompass "the qualifications of the arbitrator to act; i.e., his bias or lack thereof." ( Cobler, supra, at p. 529, 265 Cal.Rptr. 868.) The court concluded that the declaration was admissible to determine whether there was corruption or bias ( Code Civ. Proc., § 1286.2, subd. (a)(1) ). ( Cobler , supra , at p. 529, 265 Cal.Rptr. 868 ; see Betz v. Pankow (1993) 16 Cal.App.4th 919, 927, 20 Cal.Rptr.2d 834 [in view of Evidence Code section 703.5, "[t]he merits of the controversy, the manner in which evidence was weighed or the mental processes of the arbitrators in reaching their decision are not subject to judicial review"].)
2. Analysis
Before the trial court and on appeal, Liberty Mutual has contended that Evidence Code section 703.5 bars the admission of declarations from *1036 appraisers unless offered for limited reasons. In challenging the admission of Fraraccio's declaration under the statute, Liberty Mutual raised an objection to the declaration in its entirety, as well as objections to each individual section of the declaration. Applying the standards set forth above, we conclude that only one portion of Fraraccio's declaration was admissible.
The declaration was submitted to support appellant's challenges to the award, which were based primarily on the ground that the appraisers exceeded their authority ( Code Civ. Proc., § 1286.2, subd. (a)(4).) In support of those challenges, Fraraccio provided an account of the appraisal proceedings, including the evidence presented and the appraisers' deliberations, and set *96 forth his reasons for declining to sign the award. For the reasons discussed above, the portions of the declaration supporting contentions unrelated to unethical or similarly improper conduct by the appraisers or Liberty Mutual were inadmissible.
Only in connection with one challenge we discuss further below (see pt. E. of the Discussion, post ) did appellants assert that the award "was procured by corruption, fraud or other undue means" ( Code Civ. Proc., § 1286.2, subd. (a)(1) ). Before the trial court, they argued that Liberty Mutual and its coverage attorney engaged in " 'fraud' " because they misled appellants and the appraisal panel regarding an alleged prior agreement regarding the minimum scope of loss relating to the deck claim. Although Fraraccio's declaration contained no description of any such misconduct, it stated that appellants' counsel informed the appraisers regarding that alleged agreement, and that Fraraccio disagreed with Liberty Mutual's selected appraiser Caulkins regarding whether that minimum scope of loss should be respected. In view of Cobler , only that portion of the declaration was admissible under Evidence Code section 703.5.
The trial court concluded that Fraraccio's declaration was admissible in its entirety because he was not an arbitrator within the meaning of the statute, reasoning that in an appraisal proceeding, "the only person who is serving a quasi-judicial function is the umpire," and that "[t]he other two appraisers are really advocates for either side." The court's ruling thus presents a question of statutory interpretation-whether the term "arbitrator," as used in the statute, applies to party-selected appraisers. In order to resolve this question, we seek the legislative intent, looking first to the plain meaning of that word, with an eye to its context and other statutes relating to the same subject matter. ( In re Jerry R. (1994) 29 Cal.App.4th 1432, 1437, 35 Cal.Rptr.2d 155.) For the reasons discussed below, we conclude the term "arbitrator" encompasses all the members of the appraisal panel.
We begin by observing that Evidence Code section 703.5, on its face, imposes no limit on the type of arbitrator subject to it. It begins, "No person *1037 presiding at any judicial or quasi-judicial proceeding, and no arbitrator or mediator, shall be competent to testify ...." Viewed in context, the phrase "presiding at any judicial or quasi-judicial proceeding" cannot reasonably be understood to qualify the term "arbitrator," as the former attaches directly to "[n]o person," and forms part of a distinct clause, separated from the clause beginning "no arbitrator" by a comma and the conjunction "and."
We further conclude that the term "arbitrator" itself does not convey any such limitation. Because appraisals are agreement-based arbitration proceedings subject to the statutory scheme regulating nonjudicial arbitration ( Code Civ. Proc., § 1280 et seq. ), we look to that scheme to establish the meaning of the term "arbitrator." The sole statutory regulation within the scheme concerning the selection of arbitrators is Code of Civil Procedure section 1281.6, which provides that courts must enforce the method of selecting arbitrators set forth in the agreement. ( Atlas Plastering, Inc. v. Superior Court (1977) 72 Cal.App.3d 63, 70, 140 Cal.Rptr. 59.) Accordingly, when an agreement provides that each party shall select an arbitrator, and that the two arbitrators shall select a third arbitrator, that method of selection must be employed. ( Id . at pp. 69-72, 140 Cal.Rptr. 59.) Although the statutory scheme applies the term "[n]eutral arbitrator" to such an arbitrator-selected arbitrator ( Code Civ. Proc., § 1280, subd. (d) ), nothing in the scheme suggests that party-selected arbitrators are not fully arbitrators, *97 or that only neutral arbitrators have that status. For that reason, party-selected appraisers must be regarded as arbitrators within the meaning of Evidence Code section 703.5.
Pointing to Good v. Kaiser Foundation Hospital (1984) 152 Cal.App.3d 819, 199 Cal.Rptr. 581 ( Good ) and Mahnke v. Superior Court (2009) 180 Cal.App.4th 565, 103 Cal.Rptr.3d 197 ( Mahnke ), appellants contend that because party-selected appraisers are not "neutral arbitrators" and are expected to favor the parties who select them, they are not subject to Evidence Code section 703.5. We disagree. Under the statutory scheme governing arbitration, the term "[n]eutral arbitrator" refers to an arbitrator not selected by a specific party.[9] Had the Legislature intended to exclude party-selected arbitrators-including party-selected appraisers-from the scope of Evidence Code section 703.5, it could have done so by expressly providing that "no [neutral ] arbitrator ... shall be competent to testify ..." (See Goebel v. City of Santa Barbara (2001) 92 Cal.App.4th 549, 559, 111 Cal.Rptr.2d 901, italics added.) Although Good and Mahnke note that party-selected arbitrators and appraisers are not regarded as fully neutral, those decisions do not suggest that *1038 party-selected appraisers fall outside the scope of Evidence Code section 703.5, as neither discusses that statute.[10]
Appellants' reliance on Jefferson Ins. Co. v. Superior Court (1970) 3 Cal.3d 398, 90 Cal.Rptr. 608, 475 P.2d 880 also is misplaced. There, our Supreme Court stated that an appraiser's declaration was admissible to establish that the appraisal panel had exceeded its authority by using an improper method of determining the value of a loss. ( Id . at p. 403, 90 Cal.Rptr. 608, 475 P.2d 880.) As that decision predates the amendment of Evidence Code section 703.5 to encompass appraisers, it provides no guidance regarding the application of that statute. In sum, we disregard Fraraccio's declaration in reviewing the confirmation of the appraisal award, with the exception of the portion of that declaration noted above.
D.-H.***
DISPOSITION
The judgment confirming the appraisal award is affirmed. Respondents are awarded their costs on appeal.
We concur:
EPSTEIN, P.J.
WILLHITE, J.

The pipe claim was submitted under a policy issued by respondent Liberty Mutual Fire Insurance Company, which was effective until February 16, 2014. The deck claim was submitted under a policy issued by respondent Liberty Insurance Corporation, which was effective after that date. For ease of reference, the parties refer to the insurers jointly as "Liberty Mutual." We also do so.
We further observe that in mid-February 2014, before the rainstorm, appellants reported a water pipe break under the house's foundation, and submitted a claim based on that incident. Later, appellants filed a lawsuit relating to the claim. Appellants have noticed a separate appeal from the judgment in that action, and the issues regarding the underlying claim are not before us.

The parties dispute the amount of Liberty Mutual's payments. Liberty Mutual asserts that it paid $66,077; appellants maintain that Liberty Mutual paid a net amount of $59,618.34, after withholding $3,959.11 for depreciation and $2,500 as a deductible. The discrepancy is not material to our determination of the instant appeal.

The term "scope of loss" ordinarily refers to the domain of putatively damaged items relevant to a claim. (See Lee v. California Capital Ins. Co. (2015) 237 Cal.App.4th 1154, 1160, 1161-1164, 188 Cal.Rptr.3d 753 (Lee ).)

As explained below (see Discussion, pt. C., post ), the appraisal panel had three members: an appraiser selected by appellants, an appraiser selected by Liberty Mutual, and an "umpire" chosen by the party-selected appraisers.

In April 2016, shortly before the appraisal panel issued its award, appellants filed an ex parte application for a stay of the appraisal, which was denied. The application contended, inter alia, that Liberty Mutual's selected appraiser was no longer qualified to serve because a firm he owned had been named as a defendant in an unrelated lawsuit initiated by appellants' counsel. Before us, appellants have not challenged the denial of that application.

To enforce the finality of arbitration, the statutes governing nonjudicial arbitration awards minimize judicial intervention. (Moncharsh v. Heily & Blase (1992) 3 Cal.4th 1, 10, 10 Cal.Rptr.2d 183, 832 P.2d 899 (Moncharsh ).) Once a petition to confirm an award is filed, the superior court has only four courses of conduct: to confirm the award, to correct and confirm it, to vacate it, or to dismiss the petition. (United Brotherhood of Carpenters etc., Local 642 v. DeMello (1972) 22 Cal.App.3d 838, 840, 100 Cal.Rptr. 564.) The trial court is empowered to correct or vacate the award, or dismiss the petition, upon the grounds set out in the pertinent statutes; "[o]therwise courts may not interfere with arbitration awards." (Santa Clara-San Benito etc. Elec. Contractors' Assn. v. Local Union No. 332 (1974) 40 Cal.App.3d 431, 437, 114 Cal.Rptr. 909.)

The statute also provides that an award "shall be vacate[d]" for related grounds, namely, when there was "corruption in any of the arbitrators" or "[t]he rights of the party were substantially prejudiced by misconduct of a neutral arbitrator." (Code Civ. Proc., § 1286.2, subds. (a)(2), (a)(3).)

We observe that the parties asserted many evidentiary objections to the respective adversarial showing. Although the record provided by appellants discloses that the trial court ruled on the objections, it does not contain a written order or oral statement describing the rulings, with the exception of a ruling we discuss below (see pt. D. of the Discussion, post ). Because the record is silent regarding the other rulings, when appropriate, we will presume they were rendered in the manner most favorable to the confirmation of the award. (See Gee v. American Realty & Construction, Inc. (2002) 99 Cal.App.4th 1412, 1416, 122 Cal.Rptr.2d 167.)

See footnote *, ante .

Subdivision (d) of Code of Civil Procedure section 1280 defines "[n]eutral arbitrator" to be "an arbitrator who is (1) selected jointly by the parties or by the arbitrators selected by the parties or (2) appointed by the court when the parties or the arbitrators selected by the parties fail to select an arbitrator who was to be selected jointly by them."

Good predates the amendment to Evidence Code section 703.5 relating to arbitrators, and stands for the proposition that a party-selected arbitrator's bias does not support vacation of arbitration award under Code of Civil Procedure section 1286.2, subdivision (c), because that provision applies only to prejudicial misconduct by a " 'neutral arbitrator.' " (Good , supra , 152 Cal.App.3d at p. 822, 199 Cal.Rptr. 581.) Mahnke concluded that although party-selected appraisers may be subject to a higher standard of impartiality than ordinary party-selected arbitrators due to the requirement that they be "competent and disinterested" (Ins. Code, § 2071, subd. (a) ), they need not comply with certain disclosure obligations imposed on neutral arbitrators (Code Civ., Proc., §§ 1281.9, 1281.91 ). (Mahnke , supra , 180 Cal.App.4th at pp. 573-578, 103 Cal.Rptr.3d 197.)

See footnote *, ante .