FILED

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FEB 6 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| COMPREHENSIVE MEDICAL CENTER, INC., | No. 23-3308 |
| Plaintiff - Appellant, | D.C. No. 2:17-cv-07672-JAK-JPR |
| v. | MEMORANDUM* |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Submitted February 4, 2025**
Pasadena, California

Before: WARDLAW, CALLAHAN, and HURWITZ, Circuit Judges.

After water leaks damaged the office of Comprehensive Medical Center,

Inc. ("CMC"), CMC's insurer, State Farm Mutual Automobile Insurance Company

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

("State Farm"), paid $164,500 for income lost due to the leaks. CMC sued State Farm, seeking additional benefits. Pursuant to the policy, the district court ordered an appraisal to determine the amount of income lost by CMC each month for the 16-month period following the initial leak. The district court confirmed the appraisal panel's decision, and granted summary judgment to State Farm, concluding that State Farm does not owe CMC additional benefits because there is no genuine dispute that the "period of restoration" ("POR") under the policy was six months or less and State Farm's payment exceeds CMC's lost income for the six-month period following the initial leak. CMC appealed. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1.      CMC claims that the appraisal panel exceeded the scope of its authority. We review de novo the orders compelling the appraisal and confirming the appraisal panel's decision. *See Unite Here Loc. 30 v. Sycuan Band of the Kumeyaay Nation*, 35 F.4th 695, 700 (9th Cir. 2022); *Portland Gen. Elec. Co. v. US. Bank Tr. Nat'l Ass'n*, 218 F.3d 1085, 1089 (9th Cir. 2000).

Under California law, "an appraiser has authority to determine only a question of fact, namely the actual cash value or amount of loss of a given item." *Lee v. Cal. Capital Ins. Co.*, 188 Cal. Rptr. 3d 753, 761 (Cal. Ct. App. 2015) (citation and quotation marks omitted). When the parties dispute the "quality or condition" of an item claimed to be damaged, "[i]t is the responsibility of the

appraisal panel to resolve these factual disputes and arrive at a valuation of the loss." *Id.* at 769.

To forecast CMC's income but for the water damage, the appraisal panel needed to resolve the parties' dispute over whether and to what extent CMC's problems with its machines would have continued to negatively affect CMC's revenues. The appraisal panel ultimately determined that CMC would not have enjoyed its historical (*i.e.*, pre-machine problems) growth rate of 3.75 percent between June 2016 and August 2016 but would have enjoyed its historical growth rate thereafter. The district court properly concluded that this determination resolved a factual dispute over the pre-loss condition of CMC's business, not a dispute about "causation" or "coverage." Accordingly, this determination was within the scope of the appraisal panel's authority, and the panel was not required to submit two different amounts of loss based on the parties' competing positions. *See Lee*, 188 Cal. Rptr. 3d at 769 (ordering appraisers to resolve disputes over the pre-loss condition of damaged items and to "arrive at a single value for the loss," "instead of offering two dueling versions of required repairs").

2.     CMC also claims that material fact disputes made summary judgment inappropriate. We review the district court's order de novo. *See Cort v. St. Paul Fire & Marine Ins. Cos., Inc.*, 311 F.3d 979, 983 (9th Cir. 2002).

State Farm's payment covered CMC's lost income for the eight-month

period following the initial leak in June 2016—*i.e.*, through January 2017. There is no genuine dispute that the POR ended by January 31, 2017, because CMC's contractor repeatedly estimated that the repairs would take five months or less. Notably, CMC's contractor agreed that even if the repairs did not begin until November 2017, they could have been completed in two to three months, at the beginning of 2017.

In opposition to State Farm's motion for summary judgment, CMC's contractor submitted a declaration opining that the repairs could have taken 12 or more months due to: (1) delays caused by failures by the landlord, the property manager, and the upstairs tenant to repair the upstairs bathrooms; (2) potential delays caused by government permitting and inspection processes; and (3) purported delays caused by subsequent leaks. The district court correctly concluded that this new estimate did not create a triable factual issue over the length of the POR. The policy defines the POR to end on "[t]he date when the property at the described premises *should be repaired*, rebuilt or replaced *with reasonable speed* and similar quality." (Emphasis added.) Thus, the POR is the theoretical period when repairs "should" have been completed with "reasonable speed," and it excludes time periods for the delays included in CMC's contractor's declaration.

The district court properly rejected the argument that the POR should

include the time needed to repair the upstairs bathrooms because the POR is defined by reference to "the described premises," of which the upstairs bathrooms are not a part. As the district court also explained, the POR by definition only begins upon a loss "caused by" a "Covered Cause Of Loss," and the district court correctly held that it would be unreasonable to conclude that events that could not trigger the POR—events that were excluded as "Covered Causes of Loss"—could serve as the basis for extending the POR. Here, the policy excludes coverage "for any loss caused by . . . [c]onduct, acts or decisions, including the failure to . . . decide, of any person . . . whether intentional, wrongful, negligent or without fault." Thus, the POR does not cover losses caused by the actions (or the failures to act) of the landlord, the property manager, or the upstairs tenant. Moreover, the POR specifically excludes "any increased period required due to the enforcement of any ordinance or law that . . . [r]egulates the construction, use or repair . . . ."

Finally, just as the policy excludes coverage for losses caused by the acts or decisions of others, so too it excludes "coverage for any loss caused by . . . . [c]ontinuous or repeated seepage, discharge or leakage of water . . . that occurs over a period of 14 days or more." Therefore, the POR does not include delays caused by subsequent leaks which occurred more than 14 days after the initial leak. In any event, even if the repairs should not have begun until November 2016 (after the third leak), summary judgment remains proper because State Farm paid

23-3308

sufficient lost income benefits to cover a POR through the end of January 2017—

the time when CMC's contractor estimated repairs could be completed if they had

begun in November 2016.[1]

**AFFIRMED.**

---

[1] CMC also argues that the district court erroneously sustained State Farms's objections to CMC's summary judgment evidence but fails to explain how any of the excluded evidence could have created a triable factual issue.  To the extent such evidence is relevant to the length of the POR, it was offered in support of the CMC's erroneous legal theories that the POR includes the delays described above.