Filed 2/27/18

# CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ARASH KHORSAND et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> LIBERTY MUTUAL FIRE INSURANCE COMPANY et al., <br><br> Defendants and Respondents. | B280273 <br> (Los Angeles County <br> Super. Ct. No. YC070063) |

 APPEAL from a judgment of the Superior Court of Los Angeles County, Stuart Rice, Judge.  Affirmed.

---

\* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts B and D through and including H of the Discussion.

Robert H. Roe; Abir Cohen Treyzon Salo, Boris Treyzon and Cynthia Goodman for Plaintiffs and Appellants.

Sedgwick, Susan K. Sullivan and Douglas J. Collodel; Cozen O'Connor, Maria Louise Cousinesu and Dina R. Richman for Defendants and Respondents.

_____

Appellants Arash Khorsand and Mahshid Fahandeza challenge the confirmation of an appraisal award under homeowners insurance policies issued by respondents Liberty Mutual Fire Insurance Company and Liberty Insurance Corporation (collectively, Liberty Mutual). Appellants contend the appraisers exceeded their authority regarding the award and that it was the product of fraud. In the published portion of this decision, we conclude that the trial court erred under Evidence Code section 703.5 in admitting part of an appraiser's declaration that appellants offered in opposing confirmation of the award. In the unpublished portion of this decision, we reject appellants' challenges to the confirmation of the award. We thus affirm the judgment confirming the award.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In March 2013, appellants' two-story house in Pacific Palisades was insured under a homeowners policy issued by Liberty Mutual. On March 5, 2013, they reported damage due to water from an upstairs water pipe. After they submitted a claim (the pipe claim), Liberty Mutual initially paid $7,996.84. Appellants hired adjuster Robert Barton, who estimated that the loss totaled $482,490.37. After Liberty Mutual retained an engineering firm, "Exponent Failure Analysis" (Exponent), to assess the damage, a contractor retained by Liberty Mutual estimated the cost of repairs to be $34,487.82. Based on that estimate, Liberty Mutual made an additional payment for undisputed loss.

In late February 2014, following a heavy rainstorm, appellants reported damage to an upper deck and other areas, and submitted another claim (the deck claim).[1] After

_____

[1] The pipe claim was submitted under a policy issued by respondent Liberty Mutual Fire Insurance Company, which was effective until February 16, 2014. The deck claim was submitted under a policy issued by respondent Liberty Insurance Corporation, which was effective after that date. For ease of reference, the parties refer to the insurers jointly as "Liberty Mutual." We also do so.

We further observe that in mid-February 2014, before the rainstorm, appellants reported a water pipe break under the house's foundation, and submitted a claim based on that incident. Later, appellants filed a lawsuit relating to the
*(Fn. is continued on the next page.)*

Exponent provided an estimate of the loss, Liberty Mutual made payments to appellants totaling between $59,618.34 and $66,077.[2] Appellants' contractor estimated the total loss to be approximately $288,000.

When adjuster Barton, acting on behalf of appellants, requested an appraisal relating to the pipe claim, Liberty Mutual denied the request, contending that disputes regarding coverage issues and the scope of the loss made an appraisal inappropriate.[3] Appellants petitioned the trial court to compel the appraisal, and in November 2014, the court granted appellants' petition. In ordering the appraisal, the court directed the appraisers to value separately items of loss regarding which Liberty Mutual

---

claim. Appellants have noticed a separate appeal from the judgment in that action, and the issues regarding the underlying claim are not before us.

[2] The parties dispute the amount of Liberty Mutual's payments. Liberty Mutual asserts that it paid $66,077; appellants maintain that Liberty Mutual paid a net amount of $59,618.34, after withholding $3,959.11 for depreciation and $2,500 as a deductible. The discrepancy is not material to our determination of the instant appeal.

[3] The term "scope of loss" ordinarily refers to the domain of putatively damaged items relevant to a claim. (See *Lee v. California Capital Ins. Co.* (2015) 237 Cal.App.4th 1154, 1160, 1161-1164 (*Lee*).)

disputed coverage or causation.[4]  Later, in March 2015, appellants requested that the deck claim be included within the existing appraisal.  Liberty Mutual agreed.

In February 2016, during the appraisal proceedings, Liberty Mutual filed an ex parte application for an order limiting the proceedings to the items of loss appellants had originally submitted in their claims.  The trial court denied the application.[5]

On April 27, 2016, the appraisal panel issued its award.  The award was signed by the umpire and Liberty Mutual's selected appraiser, but not by appellants' selected appraiser.  The award stated that the total loss was $132,293.04, and that the total loss to items regarding which Liberty Mutual disputed causation or coverage was $96,530.37.

---

[4]     As explained below (see Discussion, pt. C., *post*), the appraisal panel had three members:  an appraiser selected by appellants, an appraiser selected by Liberty Mutual, and an "umpire" chosen by the party-selected appraisers.

[5]     In April 2016, shortly before the appraisal panel issued its award, appellants filed an ex parte application for a stay of the appraisal, which was denied.  The application contended, inter alia, that Liberty Mutual's selected appraiser was no longer qualified to serve because a firm he owned had been named as a defendant in an unrelated lawsuit initiated by appellants' counsel.  Before us, appellants have not challenged the denial of that application.

5

When Liberty Mutual filed a petition to confirm the award, appellants opposed that petition and filed a motion to correct or vacate the award. Following a hearing, the trial court denied appellants' motion and confirmed the award. On January 10, 2017, the court entered judgment in favor of Liberty Mutual and against appellants in accordance with its rulings. This appeal followed.

## DISCUSSION

Appellants maintain that the trial court erred in failing to vacate the award, contending that the appraisal panel exceeded its authority in issuing the award and that it was the product of fraud. They argue that the panel erred in appraising items whose estimated damage Liberty Mutual had previously not disputed, in disregarding other items of loss, in placing more than one valuation of damage on the losses, and in failing to allocate the items of loss between the two claims. As explained below, we reject these contentions.

A. *Standard of Review*

Because appraisal proceedings are a type of arbitration, judicial review of an appraisal award is circumscribed.[6] (See *Lee, supra,* 237 Cal.App.4th at

---

[6] To enforce the finality of arbitration, the statutes governing nonjudicial arbitration awards minimize judicial intervention. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th

(*Fn. is continued on the next page.*)

6

p. 1154.)  Generally, "[i]t is not the [trial] court's role to review the merits of the controversy or to determine whether the evidence is sufficient to support the appraisal award.  [Citation.] [¶] The exclusive grounds for vacating an appraisal award are set forth in Code of Civil Procedure section 1286.2, subdivision (a).  [Citation.]" (*Ibid.*) Pertinent here are the grounds that "[t]he award was procured by corruption, fraud, or other undue means," and that "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted" (Code Civ. Proc., § 1286.2, subds. (a)(1), (a)(4)).[7]

---

1, 10 (*Moncharsh*).)  Once a petition to confirm an award is filed, the superior court has only four courses of conduct:  to confirm the award, to correct and confirm it, to vacate it, or to dismiss the petition.  (*United Brotherhood of Carpenters etc., Local 642 v. DeMello* (1972) 22 Cal.App.3d 838, 840.) The trial court is empowered to correct or vacate the award, or dismiss the petition, upon the grounds set out in the pertinent statutes; "[o]therwise courts may not interfere with arbitration awards." (*Santa Clara-San Benito etc. Elec. Contractors' Assn. v. Local Union No. 332* (1974) 40 Cal.App.3d 431, 437.)

[7]     The statute also provides that an award "shall be vacate[d]" for related grounds, namely, when there was "corruption in any of the arbitrators" or "[t]he rights of the party were substantially prejudiced by misconduct of a neutral arbitrator." (Code Civ. Proc., § 1286.2, subds. (a)(2), (a)(3).)

The trial court's ruling on a challenge to an appraisal award is reviewed "under a de novo standard, drawing every reasonable inference to support the award. [Citation.] To the extent the court's ruling rests on issues of disputed fact, however, we apply the substantial evidence test." (*Kacha v. Allstate Ins. Co.* (2006) 140 Cal.App.4th 1023, 1031 (*Kacha*).) As the record lacks a statement of decision and does not reflect the rationale for the ruling, we will imply all factual findings necessary to support it, and examine those findings for the existence of substantial evidence. (*ECC Capital Corp. v. Manatt, Phelps & Phillips, LLP* (2017) 9 Cal.App.5th 885, 900-901.)[8]

B. *Governing Principles*

Under Insurance Code section 2071, homeowners insurance policies providing fire coverage must authorize appraisal conforming to the standard policy clause set forth

---

[8] We observe that the parties asserted many evidentiary objections to the respective adversarial showing. Although the record provided by appellants discloses that the trial court ruled on the objections, it does not contain a written order or oral statement describing the rulings, with the exception of a ruling we discuss below (see pt. D. of the Discussion, *post*). Because the record is silent regarding the other rulings, when appropriate, we will presume they were rendered in the manner most favorable to the confirmation of the award. (See *Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.)

in that statute.  (*Gerbers v. State Farm General Ins. Co.* (1995) 38 Cal.App.4th 1648, 1651.)  The standard clause provides that the policyholder and the insurer are permitted to seek appraisal when they "fail to agree as to the actual cash value or the amount of loss . . . ."  (Ins. Code, § 2071, subd. (a).)  Upon a request for appraisal, each party may nominate a "competent and disinterested" appraiser; the two appraisers are then authorized to select a "competent and disinterested umpire" and conduct informal appraisal proceedings, unless the parties agree to more rigorous procedures.  (*Ibid*.)  The standard policy clause further states:  "The appraisers shall . . . appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire.  An award in writing, so itemized, of any two when filed with [the insurer] shall determine the amount of actual cash value and loss."  (*Ibid*.)

Although the statutorily mandated policy clause constitutes an agreement for arbitration, appraisal "is a special form of limited arbitration."  (*Kirkwood v. California State Automobile Assn. Inter-Insurance Bureau* (2011) 193 Cal.App.4th 49, 58.)  "The function of appraisers is to determine the amount of damage resulting to various items submitted for their consideration[,] . . . not . . . to resolve questions of coverage and interpret provisions of the policy."  (*Hughes v. Potomac Ins. Co.* (1962) 199 Cal.App.2d 239, 253, disapproved on another ground in *Sabella v. Wisler* (1963) 59 Cal.2d 21, 34.)  Rather, appraisers are empowered only to

9

determine a specific question of fact, namely, "the actual cash value or amount of loss of a given item." (*Kirkwood*, *supra*, at p. 59.)

In view of that limitation, appraisers may decide only certain types of disputes. They are authorized to resolve a dispute regarding the existence or value of loss to an item, provided the dispute hinges on a feature of the item -- namely, its existence or condition -- directly amenable to inspection. (*Lee*, *supra*, 237 Cal.App.4th at pp. 1169-1175.) In contrast, they are barred from resolving disputes that hinge on issues relating to coverage or causation of the alleged damage (*Kacha*, *supra*, 140 Cal.App.4th at pp. 1035-1038), as well as from resolving factual disputes not amenable to determination through inspection (*Safeco Ins. Co. v. Sharma* (1984) 160 Cal.App.3d 1060, 1064-1065 [in valuing paintings claimed stolen, appraisers improperly resolved factual question regarding the paintings' provenance]).

The limited nature of appraisal also imposes constraints on appraisal awards. When a specific item is subject to a dispute regarding coverage or causation, an award may value the loss to the item, provided that value is segregated so as to permit an adjustment to the award's determination of the total loss upon resolution of the dispute. (*Devonwood Condominium Owners Assn. v. Farmers Ins. Exchange* (2008) 162 Cal.App.4th 1498, 1502-1507 (*Devonwood*); see *Lee*, *supra*, 237 Cal.App.4th at pp. 1169-1170.) However, when the loss to a specific item is

10

subject to a factual dispute amenable to resolution through inspection, the award may not state alternative values for the loss based on different resolutions of the dispute, as the appraisers are required to put an end to such disputes. (*Lee*, *supra*, at pp. 1175-1176.) Thus, regarding such an item, the appraisers may -- if appropriate -- properly assign a value of $0 to the claimed loss. (*Id.* at p. 1173.)

The restrictions on appraisal set forth above are subject to modification. Under Insurance Code section 2071, subdivision (a), the requirements of the standard provisions may be waived by an express writing. (*Kacha*, *supra*, 140 Cal.App.4th at p. 1033.) Additionally, in an arbitration, a party may not voluntarily submit an issue to arbitration, "await the outcome, and if the decision is unfavorable, challenge the authority of the arbitrator to act." (*University of San Francisco Faculty Assn. v. University of San Francisco* (1983) 142 Cal.App.3d 942, 954; *Felner v. Meritplan Ins. Co.* (1970) 6 Cal.App.3d 540, 544 (*Felner*); *Hernandez v. State Farm Ins. Co.* (1969) 272 Cal.App.2d 255, 256-257.)

C. *Admission of Appraiser's Declaration*

At the threshold of our inquiry into the confirmation of the award, we examine an issue regarding the evidence properly considered in reviewing that ruling, namely, the extent to which the court properly admitted a declaration by appellants' selected appraiser. After the court granted appellants' petition to compel appraisal, appellants selected

Andrew Fraraccio as their appraiser and Liberty Mutual selected Jeff Caulkins as its appraiser; Fraraccio and Caulkins then chose Robert Mann to act as umpire.  In challenging the award, appellants submitted a declaration from Fraraccio, who offered an account of the appraisal proceedings.  Liberty Mutual asserted objections to the declaration under Evidence Code section 703.5, which the trial court overruled.  On appeal, Liberty Mutual challenges that ruling.

Although Liberty Mutual noticed no cross-appeal from the judgment, we may consider the extent to which the declaration was inadmissible under Evidence Code section 703.5.  "As a general rule, respondents who fail to file a cross-appeal cannot claim error in connection with the opposing party's appeal.  [Citation.]  A limited exception to this rule is provided by [Code of Civil Procedure] section 906, which states in pertinent part:  'The respondent . . . may, without appealing from [the] judgment, request the reviewing court to and it may review any of the foregoing [described orders or rulings] for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken.'  [Citation.] '"The purpose of the statutory exception is to allow a respondent to assert a legal theory which may result in affirmance of the judgment." [Citation.]'  [Citation.]" (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223

12

Cal.App.4th 1105, 1121.) We therefore examine the admissibility of Fraraccio's declaration.

### 1. *Governing Principles*

Evidence Code section 703.5 states: "No person presiding at any judicial or quasi-judicial proceeding, and no arbitrator or mediator, shall be competent to testify, in any subsequent civil proceeding, as to any statement, conduct, decision, or ruling, occurring at or in conjunction with the prior proceeding, except as to a statement or conduct that could (a) give rise to civil or criminal contempt, (b) constitute a crime, (c) be the subject of investigation by the State Bar or Commission on Judicial Performance, or (d) give rise to disqualification proceedings under paragraph (1) or (6) of subdivision (a) of Section 170.1 of the Code of Civil Procedure." As explained in *Cobler v. Stanley, Barber, Southard, Brown & Associates* (1990) 217 Cal.App.3d 518, 528, fn. 5 (*Cobler*), though enacted in 1979, Evidence Code section 703.5 did not encompass arbitrators until it was amended in 1988.

The application of Evidence Code section 703.5 to declarations from arbitrators was examined in *Cobler*. There, a party to an arbitration sought to vacate the award on the ground that the arbitrator had engaged in corruption or was biased (Code Civ. Proc., § 1286.2, subd. (a)(1)). (*Cobler, supra*, 217 Cal.App.3d at pp. 523-526.) After admitting a declaration from the arbitrator over an objection based on Evidence Code section 703.5, the trial court

13

declined to vacate the award.  (*Cobler, supra,* at pp. 525-526.)

On appeal, the party seeking vacation of the award challenged the admission of the arbitrator's declaration. (*Cobler*, *supra*, 217 Cal.App.3d at p. 527.)  In rejecting that contention, the appellate court noted that before the amendment of Evidence Code section 703.5 to encompass arbitrators, judicial decisions had confined the admission of declarations from arbitrators to specific purposes.  (*Cobler, supra,* at p. 527.)  Under those decisions, arbitrator declarations were admissible when "'the record d[id] not disclose issues submitted for decision and the materials considered by the arbitrators [citation][,]when a dissenting arbitrator charge[d] improprieties in the arbitration [citation][,] and whe[n] others charge[d] bias, partiality or improper conduct [citation],'" but were not admissible to challenge the merits of the award.  (*Id*. at p. 528.)  The appellate court concluded that the amendment to Evidence Code section 703.5 imposed even greater restrictions, limiting the admission of arbitrator declarations to the four purposes specified in that statute, which the court construed to encompass "the qualifications of the arbitrator to act; i.e., his bias or lack thereof."  (*Cobler, supra,* at p. 529.)  The court concluded that the declaration was admissible to determine whether there was corruption or bias (Code Civ. Proc., § 1286.2, subd. (a)(1)).  (*Cobler, supra*, at p. 529; see *Betz v. Pankow* (1993) 16 Cal.App.4th 919, 927 [in view of Evidence Code section 703.5, "[t]he merits of the

14

controversy, the manner in which evidence was weighed or the mental processes of the arbitrators in reaching their decision are not subject to judicial review"].)

### 2. *Analysis*

Before the trial court and on appeal, Liberty Mutual has contended that Evidence Code section 703.5 bars the admission of declarations from appraisers unless offered for limited reasons. In challenging the admission of Fraraccio's declaration under the statute, Liberty Mutual raised an objection to the declaration in its entirety, as well as objections to each individual section of the declaration. Applying the standards set forth above, we conclude that only one portion of Fraraccio's declaration was admissible.

The declaration was submitted to support appellant's challenges to the award, which were based primarily on the ground that the appraisers exceeded their authority (Code Civ. Proc., § 1286.2, subd. (a)(4).) In support of those challenges, Fraraccio provided an account of the appraisal proceedings, including the evidence presented and the appraisers' deliberations, and set forth his reasons for declining to sign the award. For the reasons discussed above, the portions of the declaration supporting contentions unrelated to unethical or similarly improper conduct by the appraisers or Liberty Mutual were inadmissible.

Only in connection with one challenge we discuss further below (see pt. E. of the Discussion, *post*) did appellants assert that the award "was procured by

15

corruption, fraud or other undue means" (Code Civ. Proc., § 1286.2, subd. (a)(1)).  Before the trial court, they argued that Liberty Mutual and its coverage attorney engaged in "'fraud'" because they misled appellants and the appraisal panel regarding an alleged prior agreement regarding the minimum scope of loss relating to the deck claim.  Although Fraraccio's declaration contained no description of any such misconduct, it stated that appellants' counsel informed the appraisers regarding that alleged agreement, and that Fraraccio disagreed with Liberty Mutual's selected appraiser Caulkins regarding whether that minimum scope of loss should be respected.  In view of *Cobler*, only that portion of the declaration was admissible under Evidence Code section 703.5.

The trial court concluded that Fraraccio's declaration was admissible in its entirety because he was not an arbitrator within the meaning of the statute, reasoning that in an appraisal proceeding, "the only person who is serving a quasi-judicial function is the umpire," and that "[t]he other two appraisers are really advocates for either side."  The court's ruling thus presents a question of statutory interpretation -- whether the term "arbitrator," as used in the statute, applies to party-selected appraisers.  In order to resolve this question, we seek the legislative intent, looking first to the plain meaning of that word, with an eye to its context and other statutes relating to the same subject matter.  (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1437.)  For the reasons discussed below, we conclude the term

16

"arbitrator" encompasses all the members of the appraisal panel.

We begin by observing that Evidence Code section 703.5, on its face, imposes no limit on the type of arbitrator subject to it. It begins, "No person presiding at any judicial or quasi-judicial proceeding, and no arbitrator or mediator, shall be competent to testify . . . ." Viewed in context, the phrase "presiding at any judicial or quasi-judicial proceeding" cannot reasonably be understood to qualify the term "arbitrator," as the former attaches directly to "[n]o person," and forms part of a distinct clause, separated from the clause beginning "no arbitrator" by a comma and the conjunction "and."

We further conclude that the term "arbitrator" itself does not convey any such limitation. Because appraisals are agreement-based arbitration proceedings subject to the statutory scheme regulating nonjudicial arbitration (Code Civ. Proc., § 1280 et seq.), we look to that scheme to establish the meaning of the term "arbitrator." The sole statutory regulation within the scheme concerning the selection of arbitrators is Code of Civil Procedure section 1281.6, which provides that courts must enforce the method of selecting arbitrators set forth in the agreement. (*Atlas Plastering, Inc. v. Superior Court* (1977) 72 Cal.App.3d 63, 70.) Accordingly, when an agreement provides that each party shall select an arbitrator, and that the two arbitrators shall select a third arbitrator, that method of selection must be employed. (*Id.* at pp. 69-72.) Although the statutory

17

scheme applies the term "[n]eutral arbitrator" to such an arbitrator-selected arbitrator (Code Civ. Proc., § 1280, subd. (d)), nothing in the scheme suggests that party-selected arbitrators are not fully arbitrators, or that only neutral arbitrators have that status. For that reason, party-selected appraisers must be regarded as arbitrators within the meaning of Evidence Code section 703.5.

Pointing to *Good v. Kaiser Foundation Hospital* (1984) 152 Cal.App.3d 819 (*Good*) and *Mahnke v. Superior Court* (2009) 180 Cal.App.4th 565 (*Mahnke*), appellants contend that because party-selected appraisers are not "neutral arbitrators" and are expected to favor the parties who select them, they are not subject to Evidence Code section 703.5. We disagree. Under the statutory scheme governing arbitration, the term "[n]eutral arbitrator" refers to an arbitrator not selected by a specific party.[9] Had the Legislature intended to exclude party-selected arbitrators -- including party-selected appraisers -- from the scope of Evidence Code section 703.5, it could have done so by expressly providing that "no [*neutral*] arbitrator . . . shall be competent to testify . . . " (See *Goebel v. City of Santa*

---

[9] Subdivision (d) of Code of Civil Procedure section 1280 defines "[n]eutral arbitrator" to be "an arbitrator who is (1) selected jointly by the parties or by the arbitrators selected by the parties or (2) appointed by the court when the parties or the arbitrators selected by the parties fail to select an arbitrator who was to be selected jointly by them."

18

*Barbara* (2001) 92 Cal.App.4th 549, 559, italics added.)
Although *Good* and *Mahnke* note that party-selected
arbitrators and appraisers are not regarded as fully neutral,
those decisions do not suggest that party-selected appraisers
fall outside the scope of Evidence Code section 703.5, as
neither discusses that statute.[10]

Appellants' reliance on *Jefferson Ins. Co. v. Superior
Court* (1970) 3 Cal.3d 398 also is misplaced. There, our
Supreme Court stated that an appraiser's declaration was
admissible to establish that the appraisal panel had
exceeded its authority by using an improper method of
determining the value of a loss. (*Id.* at p. 403.) As that
decision predates the amendment of Evidence Code section
703.5 to encompass appraisers, it provides no guidance

---

[10]     *Good* predates the amendment to Evidence Code
section 703.5 relating to arbitrators, and stands for the
proposition that a party-selected arbitrator's bias does not
support vacation of arbitration award under Code of Civil
Procedure section 1286.2, subdivision (c), because that
provision applies only to prejudicial misconduct by a
"'neutral arbitrator.'" (*Good, supra*, 152 Cal.App.3d at
p. 822.) *Mahnke* concluded that although party-selected
appraisers may be subject to a higher standard of
impartiality than ordinary party-selected arbitrators due to
the requirement that they be "competent and disinterested"
(Ins. Code, § 2071, subd. (a)), they need not comply with
certain disclosure obligations imposed on neutral arbitrators
(Code Civ., Proc., §§ 1281.9, 1281.91). (*Manhke, supra*, 180
Cal.App.4th at pp. 573-578.)

regarding the application of that statute.  In sum, we disregard Fraraccio's declaration in reviewing the confirmation of the appraisal award, with the exception of the portion of that declaration noted above.

D.  *Liberty Mutual's Showing in Support of Confirmation of the Award*

In seeking to confirm the award and opposing the motion to vacate it, Liberty Mutual offered evidence supporting the following version of the underlying events: Liberty Mutual adjuster Kenneth Marsili was assigned to the March 2013 pipe claim and the February 2014 deck claim based on the rainstorm.  In connection with the deck claim, Liberty Mutual's engineering firm Exponent told Marsili that replacing the exterior deck surfaces would cost approximately $46,667.  Although the deck surfaces were not damaged, Exponent concluded that they needed to be replaced because they were porous and potentially related to mold on a nearby bathroom ceiling.  Relying on that conclusion, Marsili provided a mold report to appellants. Later, in June 2014, Exponent determined that the structure above the bathroom ceiling was not porous.  When Marsili advised Barton of the correction, Barton replied that appellants already had demolished the deck surfaces in reliance on the mold report.

Marsili included the deck surfaces within his estimate of the loss, and Liberty Mutual paid for their replacement. Later, when Marsili visited appellants' house, he discovered

that they had demolished a part of the deck surface unrelated to the part discussed in the mold report.

In November 2014, upon granting appellant's petition to compel appraisal of the pipe claim, the trial court issued an order containing directions to the appraisers. The order barred the appraisers from deciding any issues concerning "policy coverage, statutory interpretation or cause of loss." The order stated: "Liberty Mutual shall provide [appellants'] counsel with an adjusted copy of the August 2013 scope of loss and repair estimate submitted by . . . Barton on behalf of [appellants]. The adjustments to the Barton estimate by Liberty Mutual must show specific line items Liberty Mutual agrees to pay, and which specific line items Liberty Mutual is refusing to pay. . . . Any line item(s) in the Barton estimate that Liberty Mutual contends are not covered under the terms of its policy must be valued separately in the appraisal award in such a way that the disputed line item(s) can be eliminated from a future judgment if the line item(s) are later determined not to be covered under the terms of the applicable insurance contract."

In a letter to Liberty Mutual dated March 2, 2015, appellants' counsel Robert Roe stated: "[Appellants] hereby demand appraisal of the amount of loss related to the [deck claim]. We would like to simply add this claim to the existing appraisal process taking place regarding the [pipe] claim. Please let me know if Liberty Mutual will agree to

include this claim in the current appraisal." Liberty Mutual agreed to do so.

Prior to the first meeting of the appraisal panel, Fraraccio presented an estimate of the deck claim that included items not previously included in the claim. In September 18, 2015, Liberty Mutual objected to the umpire regarding appraisal of the new items.

In late 2015, during the first two appraisal hearings, the appraisers examined appellants' residence and received their evidence. At the end of the second hearing, after appellants completed the presentation of their evidence, the parties set a third hearing for January 18, 2016, during which Liberty Mutual was to present its evidence.

On January 11, 2016, Roe told Liberty Mutual that appellants had hired a new contractor to provide new loss estimates, and that they intended to engage in additional destructive testing at the residence. Liberty Mutual objected to the new estimates and the proposed destructive testing, but the umpire permitted the destructive testing, which occurred on January 13 and 14. At the third appraisal hearing, appellants presented the results of the destructive testing and two new repair estimates. In order to give Liberty Mutual an opportunity to respond, the parties set a fourth hearing for February 22, 2016.

On February 11, 2016, Liberty Mutual filed an ex parte application for an order limiting the appraisal to the items appellants had originally identified in their claims. Appellants' opposition to the application stated: "Liberty

22

Mutual misstated the law when it suggests an appraisal panel is bound by the scope of an insured's damage estimate. Recent California case law makes clear that an important function of an appraisal panel is to *independently* determine the *existence* of damage and then place a value on the cost of repair or replacement. The panel is not bound by the representations of either party but is free [to] make its own independent determination of the scope of loss." The opposition further stated that the appraisers were required to determine the actual cash value of the losses, and that it was the appraisers' own estimates "-- not earlier estimates prepared by the parties -- that defined the scope of an appraisal award." The trial court denied Liberty Mutual's ex parte application.

At some point during the appraisal proceedings, Marsili related the incident regarding the mold report to the appraisers. According to Marsili, following appellants' destructive testing, he concluded that water from the rainstorm had neither damaged the exterior deck surfaces nor intruded into the bathroom. Although Liberty Mutual never requested the return of the funds paid relating to the exterior deck surfaces, it maintained that there was no need to repair or replace those surfaces.

Following the fourth appraisal hearing on February 22, 2016, Liberty Mutual proposed a form for the award that reflected appellants' revised scopes of loss and repair estimates. The proposed form distinguished the two claims, and under each claim, set forth every item of loss appellants

23

had alleged in connection with the claim. In order to comply with the order compelling appraisal, the proposed form identified the items subject to disputes regarding coverage or causation.

In a letter to Liberty Mutual's counsel dated April 13, 2016, Roe objected to "an award form in which the panel is required to divide the damages between the two separate claims." Roe stated that the proposed form improperly required the panel to make determinations regarding causation. Liberty Mutual agreed to permit the panel to combine the two claims in a single award without allocating the items of loss between the two claims.

On April 27, 2016, the appraisal panel issued its award, which was signed by the umpire and Liberty Mutual's selected appraiser. The award stated that because the appraisers had addressed damages "without consideration of causation or coverage," items of loss were not allocated between the two claims. The award found that the total loss was $132,293.04, including the loss to items regarding which Liberty Mutual disputed causation or coverage. The award further found that loss to the disputed items totaled $96,530.37. Attached to the award was a spreadsheet enumerating each item of loss and the appraised value of the loss. The award further assigned loss values to items for which Liberty Mutual disputed causation or coverage.

E. *Appellants' Showing*

In support of appellants' challenges to the award, Khorsand submitted a declaration stating that in June 2014, in response to the deck claim, Liberty Mutual provided a loss estimate of $66,077.45, which Khorsand believed to include the replacement of the entire upper deck, as well as tiles on the house's decks and inside the master bedroom. Khorsand further stated: "In 2015, Liberty [Mutual] offered to include the . . . deck claim as part of the appraisal of the 2013 . . . claim. I consented to the proposal, believing that the parties and the appraisal panel would treat the scope of loss [in Liberty Mutual's estimate] as an agreed minimum scope of loss for the . . . deck claim. . . . I believed the panel would determine an amount of loss for the deck claim somewhere between the $66,077.45 paid by Liberty [Mutual] and my contractor's $288,000 estimate. I later reduced our estimate for the deck loss to approximately $244,000.00 based upon a January 2016 estimate. . . . I had no idea at the time . . . Liberty [Mutual] would later argue its earlier undisputed payment of the deck claim was a 'mistake' and urge the panel to award virtually nothing for the . . . deck loss. If I had known Liberty [Mutual] would make this argument, I would not have agreed to submit the . . . deck claim to appraisal."

Appellants also submitted a declaration from Roe, who stated that in June 2015, the parties agreed to submit the deck claim to the appraisal panel addressing the pipe claim. Prior to the first appraisal hearing, in a letter to Roe dated

June 5, 2015, Liberty Mutual provided an estimate for the deck claim showing that certain repairs to the deck surfaces were within the "'[a]greed scope of necessary repairs based on covered damages.'" At the first appraisal hearing, Roe told the appraisers that Liberty Mutual had agreed to the replacement of the entire exterior deck, and that Liberty Mutual's June 2014 loss estimate "represented an agreed minimum scope of loss that was not subject to dispute in the appraisal proceeding."

As noted above (see pt. C.2. of the Discussion, *ante*), Fraraccio's declaration stated: "When I realized that . . . Caulkins . . . wanted to reduce the scope of the . . . deck loss below the minimum level shown in the June . . . 2014 estimate discussed above, I objected and argued that the panel did not have authority to change the undisputed portion of the loss to which the parties had previously agreed more than a year earlier."[11]

---

[11] Although appellants' April 2016 ex parte application for a stay of the appraisal proceedings raised issues related to appellants' challenges to the award (see fn. 5, *ante*), they did not refer to it in opposing confirmation of the award. We therefore do not include it within our summary of their evidentiary showing.

F. *No Error in Award Relating to Liberty Mutual's June 2014 Loss Estimate for the Deck Claim*

Appellants contend the award must be vacated because it valued the actual losses for items related to the deck claim to be less than the "undisputed" amounts Liberty Mutual identified in the June 2014 estimate. They argue that under Insurance Code section 2071, subdivision (a), the appraisers lacked authority to examine the actual losses related to the undisputed amounts because that statute permits appraisal only when the parties "fail to agree as the actual cash value or the amount of loss." For related reasons, they also maintain that Liberty Mutual's conduct supports vacation of the award. They contend that Liberty Mutual's pre-appraisal acknowledgment of some undisputed amounts of damage estopped it from arguing before the appraisers that the actual losses were less than the previously undisputed amounts. Additionally, appellants argue that Liberty Mutual's position before the appraisers ignored regulations requiring insurers to accept or deny claims promptly, and provide explanations of denials (15 Cal. Code Regs., tit. 10, § 2695.7, subd. (b)(1)).[12] Appellants contend that the award

_____

[12] California Code of Regulations, title 10, section 2695.7, subdivision (b) provides in pertinent part: "(b) Upon receiving proof of claim, every insurer, . . . shall immediately, but in no event more than forty (40) calendar days later, accept or deny the claim, in whole or in part. The amounts accepted or denied shall be clearly documented in the claim file unless the claim has been denied in its
(*Fn. is continued on the next page.*)

27

exceeded the appraisers' authority and that Liberty Mutual's conduct constituted "fraud." (Code Civ. Proc., § 1286.2, subds. (a)(1), (a)(4).)

Before the trial court, Liberty Mutual maintained that appellants' contentions failed under the doctrine of judicial estoppel. Generally, judicial estoppel is intended to protect the judicial process, promote fairness in litigation, and shield parties from improper strategies adopted by opponents. (*Gottlieb. v. Kest* (2006) 141 Cal.App.4th 110, 131-132.) The doctrine precludes a party from asserting a position in an action that is inconsistent with a prior position that the party advocated with success. (*Id.* at pp. 130-131.) "'The doctrine [most appropriately] applies when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake."'" (*Id.* at p. 131, quoting *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986-987.)

---

entirety. [¶] (1) Where an insurer denies or rejects a first party claim, in whole or in part, it shall do so in writing and shall provide to the claimant a statement listing all bases for such rejection or denial and the factual and legal bases for each reason given for such rejection or denial which is then within the insurer's knowledge."

Viewed in the light most favorable to the judgment, the record shows that the trial court, upon granting appellants' petition to compel an appraisal, ordered Liberty Mutual to provide an estimate for the pipe claim complying with regulations noted above, in order to establish the items of loss properly before the appraisers. Later, after the deck claim was included within the appraisal, but before the appraisal hearings began, Liberty Mutual responded to another estimate presented by appellants in a manner complying with insurance regulation noted above. During the appraisal proceedings, after appellants sought to increase the scope of the claimed deck losses, and the umpire permitted new destructive testing over Liberty Mutual's objection, Liberty Mutual filed an ex parte application to limit the appraisal to the previously identified scopes of loss. Appellants successfully opposed the application, arguing that under California law, the appraisal panel was authorized to make independent determinations regarding the existence and actual value of the losses, that the panel was "not bound by the representations *of either party*" regarding the scope of loss, and that the appraisers' own estimates "-- not earlier estimates prepared by the parties -- defined the scope of an appraisal award." (Italics added.) After the application was denied, the appraisers -- with the exception of Fraraccio -- found the actual losses to be less than the amounts Liberty Mutual had not disputed before the appraisal.

The record before us support a finding of judicial estoppel.  Having successfully advocated the view that the appraisers' task was to evaluate the scope and value of the actual loss on the basis of the evidence, regardless of the existing estimates, appellants could not equitably require that Liberty Mutual refrain from presenting evidence and arguments to the appraisers bearing on that task, notwithstanding its prior estimates.  Accordingly, the trial court could reasonably have concluded that appellants were estopped from challenging that conduct by Liberty Mutual, as well as the appraisers' valuation of the actual loss in light of the evidence.  (See, e.g., *Felner, supra,* 6 Cal.App.3d at p. 544 ["A party cannot gamble on a favorable outcome of a submitted issue and, having lost the gamble, then attack the validity of his submission to the tribunal which decided the issue against him"].)

*Spray, Gould & Bowers v. Associated International Ins. Co.* (1999) 71 Cal.App.4th 1260, upon which appellants rely, is distinguishable.  There, after the insured filed a claim, the insurer failed to comply with an insurance regulation requiring it to alert the insured to the policy's contract-based time limit for filing a lawsuit based on an unpaid claim.  (*Id.* at p. 1263.)  When the insured commenced such a lawsuit after the time limit, the trial court granted summary judgment in favor of the insurer.  (*Id.* at pp. 1263-1265.)  Reversing, the appellate court concluded there were triable issues whether the insurer was barred from relying on the time limit under the doctrine of equitable estoppel,

which applies when a party refrains from disclosing material facts to another who is ignorant of them.[13] (*Id.* at pp. 1267-1269.) In contrast, because appellants successfully advocated for a broad definition of the appraisers' task, they cannot reasonably claim to have been ignorant of the prospect that Liberty Mutual would participate in the accomplishment of that task, as defined. In sum, appellants have failed to show that the award was subject to vacation because it valued the actual loss for certain items as less than the "undisputed" amounts Liberty Mutual previously identified.[14]

---

[13] """Four elements must ordinarily be proved to establish an equitable estoppel: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury."""" (*Spray, Gould & Bowers v. Associated Internat. Ins. Co.*, *supra*, 71 Cal.App.4th at p. 1268, quoting *DRG/Beverly Hills, Ltd.* v. *Chopstix Dim Sum Cafe & Takeout III, Ltd.* (1994) 30 Cal.App.4th 54, 59.)

[14] For the first time on appeal, appellants' reply brief contends that Liberty Mutual was required to pay for the replacement of certain exterior deck surfaces under California Code of Regulations, title 10, section 2695.9, subdivision (a), which sets standards for the payment of consequential losses resulting from the repair or replacement of covered losses. Appellants argue that they
(*Fn. is continued on the next page.*)

31

G.  *No Error In Award Due to Valuation of Losses*

Appellants challenge the manner in which the award assigns values to the losses.  They contend the award states more than one value for the same loss because the award estimated both the total losses for all the items and the total losses for the items subject to disputes regarding coverage or causation.  They further contend the award improperly "mixes various . . . items from both the 2012 [pipe] and [the] 2014 [deck] claims, leaving no way to determine which non-covered . . . items . . . should be removed from a subsequent judgment against [Liberty Mutual]."  We reject both contentions.

As explained above (see pt. B. of the Discussion, *ante*), when items of claimed loss are subject to coverage or causation disputes, an award may value the losses to those items, provided the values are set forth so as to permit adjustments to the total losses awarded upon resolution of the disputes.  (*Devonwood, supra*, 162 Cal.App.4th at pp. 1502-1507.)  Here, the trial court, in granting appellants' petition to compel appraisal of the pipe claim, directed the appraisers to value items subject to such disputes "separately . . . in such a way that the disputed line item(s)

---

are entitled to payment for losses due to their demolition of the deck in reliance upon Liberty Mutual's mistaken mold report.  Because they did not raise this contention in their opening brief, they have forfeited it.  (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 701, pp. 769-771.)

can be eliminated from a future judgment if the line item(s) are later determined not to be covered . . . ." Later, after appellants requested that the deck claim also be submitted to the same appraisal panel, they objected to Liberty Mutual's proposed form for the award, contending that its division of items between the two claims would require the panel to make causation determinations. As a result, the award separately identified loss values for items subject to coverage or causation disputes, but did not allocate any items specifically to the pipe or deck claims.

Those features of the award do not support its vacation. The first feature -- the separate identification of loss values for items subject to disputes -- merely reflects compliance with the order compelling appraisal. The second feature -- the absence of an allocation between the two claims -- is the consequence of appellants' own request. Having expressly sought that feature, appellants may not rely on it in an effort to vacate the award. (See *Moncharsh*, *supra*, 3 Cal.4th at p. 30 ["[W]e cannot permit a party to sit on his rights [before the arbitrator], content in the knowledge that should he suffer an adverse decision, he could then raise the illegality issue in a motion to vacate the arbitrator's award"].) Appellants have thus failed to show error requiring vacation of the award.

H. *No Error in Award Due to Failure to Value Losses*

Appellants challenge the award on the ground that the appraisers improperly failed to value certain items of loss.

33

They contend the appraisers excluded some damage because they made improper causation determinations, that is, attributed the damage to causes other than those underlying the pipe and deck claims.[15] They further contend the appraisers failed to consider other items of damage -- namely, the costs of packing and storing personal property during repairs, the time needed for repairs, and the fair rental value of the property during the period the house was uninhabitable following the March 2013 pipe break -- even though they received evidence regarding those items.

Appellants' contentions fail for want of supporting evidence, as the only evidence they have identified to support them are inadmissible portions of Fraraccio's declaration. Nothing in the award otherwise suggests potential error. After stating that the appraisers made no determinations of causation or coverage, the award separately valued the losses for items as to which there was a dispute regarding causation or coverage in a manner permitting adjustment of the total losses upon resolution of those disputes. The award further stated: "The [p]arties did not submit evidence regarding, and the [p]anel does not make any findings regarding contents, storage, habitability

---

[15] Appellants assert that the appraisers viewed the damage as attributable to the water pipe break in mid-February 2014, which gave rise to another claim not at issue here (see fn. 1, *ante*).

of the dwelling, or additional living expenses." Accordingly, appellants have demonstrated no improperly omitted items.

## DISPOSITION

The judgment confirming the appraisal award is affirmed. Respondents are awarded their costs on appeal.

**CERTIFIED FOR PARTIAL PUBLICATION.**

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.